**IN RE: THE ESTATE OF HARRIET E. BRILEY; MATILDA MASON v. H. G. BRILEY, Individually and as Administrator.**

21 So. (2nd) 595                                  January Term, 1945
April 6, 1945                                              En Banc

*Tilden, Hay & Cargill,* for appellant.

*Claude L. Gray,* for appellee.

*Francis M. Shea,* Assistant Attorney General, and *Herbert S. Phillips,* United States Attorney, as Amicus Curiae.

TERRELL, J.:

In May, 1939, Harriet Briley purchased a United States Savings Bond, Series D, maturity value $500, registered and payable as follows:

"To Mrs. Harriet Mason Briley, Box 113, Oakland, Fla., payable on death to Miss Matilda Mason, beneficiary, Oakland, Fla."

Mrs. Briley died intestate in April, 1942. Her husband, H. G. Briley was appointed administrator of her estate and in due course claims against the estate amounting to $2300 were filed with the administrator. In November, 1942, the administrator filed his petition in the probate court alleging that the assets of the estate are insufficient to pay the claims against it, that among its assets the said bond is listed and that it was necessary for the court to determine whether the bond is the property of the estate subject to payment of claims against it, or should be delivered to Matilda Mason, the

registered beneficiary according to the terms of the registration.

A guardian ad litem for the minor children of Mrs. Briley was appointed and filed an answer to the petition in which it was alleged that the bond was a part of the assets of the estate of Mrs. Briley, subject to the payment of claims against it, that it did not pass out of her ownership during her lifetime and no act of hers amounted to a gift inter vivos in favor of Miss Mason. The answer further alleged that neither the registration nor other acts of Mrs. Briley amounted to a gift causa mortis to Matilda Mason, that the bond was necessary to pay the debts of the estate and that the regulations of the treasurer department under which it was issued and registered could not divert it to a purpose contrary to the course it would take under the laws of Florida for the distribution of estates. Matilda Mason also filed an answer alleging that she was the owner and holder of the bond, that her ownership became absolute on the death of Mrs. Briley and that the regulations under which it was issued and registered constitute a contract between the United States and Mrs. Briley for her benefit which she is entitled to enforce.

On final hearing, the probate judge found that all the claims against Mrs. Briley's estate arose after she purchased the bond but he ordered that it be held as an asset of the estate for the payment of claims unless other assets were sufficient to do so, in which event, the bond should be turned over to Miss Mason. The judgment of the probate court was, on appeal affirmed by the circuit court and that judgment is here for review.

It is first contended that the appeal should be dismissed because of failure to file assignments of error as required by the rules of this Court and because the judgment appealed from is not such a final judgment as is required to support an appeal.

We do not think there is any merit to this contention. Error was assigned on the order entering the judgment which was by its terms conditional, but the record taken as a whole shows that the conditions were such that it adjudicated the

merits of the case and was to all intents and purposes a final judgment.

Several other questions are argued but the ultimate question for determination is whether the bond in question became the property of Matilda Mason on the death of Mrs. Briley or did it become a part of Mrs. Briley's estate to be administered under the law of Florida for the distribution of intestate estates.

Matilda Mason claims as surviving beneficiary of Mrs. Briley pursuant to terms of registration under regulations of the Treasury Department of the United States. Appellee contends on the other hand that on the death of Mrs. Briley, the bond became a part of her estate subject to distribution under Florida law for payment of claims against it. It is not denied that the bond was registered in the name of Harriet Briley, that Matilda Mason is the surviving beneficiary of Harriet Briley and the sole owner of the bond if the treasury regulations control its disposition.

Under Clause 2 of Section 8, Article I of the Federal Constitution, Congress is empowered to borrow money on the credit of the United States. Under Clause 18, same Section and Article, Congress is empowered to make all laws which shall be necessary and proper for carrying into execution the foregoing powers and all other powers vested by this Constitution in the Government of the United States, or in any Department or officer thereof.

Pursuant to said Constitutional provisions, Congress enacted the second Liberty Bond Act, Section 22 of which as amended is as follows:

"The Secretary of the Treasury, with the approval of the President, is authorized to issue, from time to time, through the Postal Service, or otherwise, bonds of the United States to be known as 'United States Savings Bonds.' The proceeds of the Savings Bonds shall be available to meet any public expenditures authorized by law and to retire any outstanding obligations of the United States bearing interest or issued on a discount basis. The various issues and series of the Savings Bonds shall be in such forms, shall be offered in such amounts within the limits of Section 752 of this title and shall be

issued in such manner and subject to such terms and conditions consistent with subsections (b) and (c) hereof, and including any restriction on their transfer, as the Secretary of the Treasury may from time to time prescribe." (Act of Sept. 24, 1917, Ch. 56, Sec. 22, as added by Act of Feb. 4, 1935, Ch. 5, Sec. 6; 49 Stat. 21; 31 U.S. C. Sec. 757c).

By virtue of authority thus conferred on the Secretary of the Treasury, he promulgated regulations governing the issuance, ownership, transfer, and payment of United States Savings Bonds. The Bond in question was one of thousands issued under these regulations; it was purchased by Harriet E. Briley and registered in her name for the benefit of Matilda Mason. The power to issue such bonds as obligations of the United States under regulations of the Secretary of the Treasury, has been upheld. Legal Tender Cases, 110 U. S. 421, 4 Sup. Ct. 122, 28 L. Ed. 204; Perry v. United States, 294 U. S. 330, 55 Sup. Ct. 432, 79 L. Ed. 912; Hampton v. United States, 276 U. S. 394, 48 Sup. Ct. 348, 72 L. Ed. 624; and Bowles v. Willingham, et al., 321 U. S. 503, 64 Sup. Ct. 641, 88 L. Ed. 892. Treasury regulations have the force and effect of Federal Law. United States v. Sacks, 257 U. S. 37, 42 Sup. Ct. 38, 66 L. Ed. 118; Maryland Casualty Co. v. United States, 251 U. S. 342, 40 Sup. Ct. 155, 64 L. Ed. 297, and cases cited.

Clause 2 of Article VI of the Federal Constitution in so far as applicable to this case is as follows:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof; . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

In many cases, the Supreme Court of the United States, actuated by the last quoted provision of the Federal Constitution has held Acts of Congress paramount to inconsistent state laws. Farmers' and M. Sav. Bank v. Minnesota, 232 U. S. 516, 34 Sup. Ct. 354, 58 L. Ed. 706, is a typical example. In fields where Federal law is supreme under the Constitution, the transactions of the Federal Government have been generally adjudicated to be free and unhampered by State regu-

lation. Hunt v. United States, 278 U. S. 96, 48 Sup. Ct. 38, 73 L. Ed. 200; Arizona v. California, 283 U. S. 423, 51 Sup. Ct. 522, 75 L. Ed. 1154; Stewart v. Sadrakuder, 309 U. S. 94, 60 Sup. Ct. 431, 84 L. Ed. 596; Mayo v. United States, 319 U. S. 441, 63 Sup. Ct. 1137, 87 L. Ed. 1504; Ruddy v. Rossi, 248 U. S. 104, 39 Sup. Ct. 46, 63 L. Ed. 148; and United States v. Emory, 314 U. S. 423, 62 Sup. Ct. 317, 86 L. Ed. 315.

There are very potent reasons why state laws governing the descent and distribution of personal property should not be construed to supersede Federal law fixing the status of a savings bond. It is not material whether the Federal law be an Act of Congress or a regulation made pursuant to a valid congressional Act. If made within the scope of the Act, the regulation has the force and effect of law. Federal bonds are issued for the purpose of carrying on important national projects in which the public at large is interested and to hold that they are affected by State law would have the effect of giving them a different status in every state in the union. Such a holding would raise many questions as to their value and would materially affect the borrowing power of the United States. A crippled borrowing power might be disastrous in a national emergency.

We feel that the point might be rested on the latter observation but there is a more impressive reason why the Federal law should be paramount in a case like this. When the Federal Government was founded, the allocation of powers between it and the States was one of the leading questions that confronted the constitutional convention. In resolving this question, the States reluctantly released certain powers to the Federal Government and reserved others to themselves. One of the anomalies of our constitutional theory is that there are certain areas of power in which the States are supreme and then there are others in which the Federal Government is supreme. Article X (Amendments) in terms reserves all powers to the States not specifically delegated to the United States. The power to borrow money and issue bonds therefor is one of the powers delegated to the United States and while the states are clothed with a similar power by their constitutions we think the power in each case

is supreme and that neither sovereignty can hamper the other in the exercise of its power.

Regardless of any preconceived idea we may entertain as to the power of the States, it must be conceded that as to those matters which concern the nation as a whole, the power of the Federal Government is at liberty to deal with them without hindrance from the States. Where two sovereignties operate in the same area, one with delegated and the other with reserved powers, it may be that conflicts will arise in the exercise of some spheres of power but if they do they should be resolved in a way that neither sovereignty will be hampered in the exercise of a power in which the public welfare requires that it be the supreme exponent. We have confronted no case that more clearly proves the dictum that constitutionality will be concluded by practical operation and effect.

While we think the foregoing is the safer theory on which to uphold the power of the Federal Government in this case, we think it may also be upheld on the theory that the registry terms of the bond constitute a contract between the United States and Mrs. Briley for the benefit of Matilda Mason, that may be enforced by her irrespective of the law of Florida governing the distribution of estates.

Within the area in which the Federal power is supreme, the United States may enter into contracts for the exercise of that power and such contracts will be controlled by Federal rather than State law. United States v. Grogan, 39 Fed. Supp. 819; Kolker v. United States, 40 Fed. Supp. 972; Garrett v. Moore McCormick Co. 317 U. S. 239, 63 Sup. Ct. 246, 87 L. Ed. 238; Warren v. United States, 68 C. Cls. 634, Cert. den. 281 U. S. 739, 50 Sup. Ct. 346, 74 L. Ed. 1154.

That the bond in question is a contract is beyond doubt and being so, Section 22 of the second Liberty Bond Act as amended and the regulations made pursuant to it are as much a part of the contract as if they had been incorporated in the bond. This rule applies as well to Government as it does to individual contracts. Russell Co. v. United States, 261 U. S. 514, 43 Sup. Ct. 428, 67 L. Ed. 778. By the Federal Act and the regulations, it is clear that on the death of the

registered owner, a Savings Bond becomes the property of the surviving designated beneficiary.

We have read the cases of Decker v. Fowler, 199 Wash. 549, 92 Pac. (2nd) 254; and Deyo v. Adams, 36 N. Y. S. (2nd) 734, 178 Misc. 859, but we do not consider them well supported. In fact, we find them severely criticized. It is our view that the bond in question is controlled by Section 22 of the Liberty Bond Act and the regulations of the Treasury Department made in pursuance thereof, that Matilda Mason is the sole owner and that she is entitled to its delivery by the terms of its registration. United States v. Dauphin Deposit Trust Company, 50 Fed. Supp. 73.

The judgment appealed from is accordingly reversed.

Reversed.

BROWN, BUFORD, THOMAS, SEBRING and ADAMS, JJ., concur.

CHAPMAN, C. J., dissents.