[Civ. No. 15045. Second Dist., Div. Three. Apr. 30, 1946.]

ELIZABETH B. DAVIES, Respondent, v. EDITH V. BEACH, as Administratrix With the Will Annexed, etc., et al., Appellants.

John A. Jorgenson for Appellants.

Gerald Bridges for Respondent.

WOOD, J.—This is an action for a declaration of the rights of the parties to certain United States savings bonds. The plaintiff claims title thereto under the provisions of the bonds, the regulations of the Treasury Department, and section 704 of the Civil Code. The defendant, who appears individually and as an administratrix, claims title thereto under the provisions of a will and the community property laws. Defendant appeals from the judgment in favor of plaintiff.

Plaintiff is the sister of George H. Beach, who died on October 19, 1943. Defendant is his widow and the administratrix with the will annexed of his estate. Defendant and decedent were married in 1919, and lived together until his death.

On April 7, 1936, he paid $3,543.75 for United States savings bonds, Series "B," of a maturity value of $4,725. The bonds recited that "The United States of America, for value received, promises to pay to Mr. George H. Beach—payable at death to—Mrs. Elizabeth B. Davies," the aggregate sum of $4,725 ten years after date. When the bonds were issued, a few days after April 7, 1936, he delivered them to his sister, who kept them until June, 1942, when at his request she returned them to him.

On February 9, 1942, he made a holographic will which provided: "That my share of the estate left by my late mother Mary J. Beach all of which has been invested in U Savings Bonds under date of April 7th 1936 and in case of

my death made payable to my sister Elizabeth B. Davies I now desire and direct that same shall be changed to read made payable to my lovable wife Edith V. Beach. In case the change is so made I hereby give to said Elizabeth B. Davies Two Hundred Dollars in cash. The entire balance of my estate is to go to my lovable wife. Should any person or persons contest this will, I hereby leave such person or persons the sum of One Dollar. All former Wills revoked. All of our property is deeded jointly. No Bond required. George H. Beach.''

The bonds were issued by the United States pursuant to the Second Liberty Bond Act of September 24, 1917, as amended, the Treasury Department Circular No. 554 of December 16, 1935, and the Treasury Department Circular No. 530, as amended, of December 2, 1930.

Circular 554 provided: That the bonds would be issued only in registered form. That they would not be transferable, and ''will be payable only to the owner named thereon, except in case of death or disability of the owner or as a result of judicial proceedings, and then only in accordance with regulations prescribed from time to time by the Secretary of the Treasury. (See Treasury Department Circular No. 530, as amended.)'' That information as to the authorized forms of registration is in Circular 530, as amended. Payment will be made as provided in Circular 530, as amended, following presentation and surrender of the bond, by registered mail or otherwise, at the expense of the owner, to the Treasury Department, with the request for payment appearing on the back of the bond duly executed by the owner and certified by certain designated persons. That regulations in effect governing bonds are in Treasury Department Circular No. 530, as amended.

Circular 530, as amended December 2, 1935, and in force at the time the bonds were purchased, provided: ''The following forms of registration are authorized. . . .

''(c) In the name of one individual and a single designated beneficiary in case of death, as, for example, 'Mr. John Smith, payable on death to Mrs. Mary Smith,' in which case the address of the registered owner and the address of the beneficiary should be inscribed on the face of the savings bond. . . .

''United States Savings Bonds are not transferable and are payable only to the owner named thereon except in the case of the disability or death of the owner or as the result of judicial proceedings, and then only to the extent specifically

provided in Sections VIII, IX, XIV, and XV hereof. [Said Sections relate respectively to minors, disability of owners, deceased owners, and creditors rights.]

"A savings bond registered in the form 'A, payable on death to B,' will be payable to the registered owner, until the Treasury Department has received notice of his death, upon the execution by him alone of the request for payment, as if the beneficiary were not named in the savings bond. . . . Registration naming beneficiaries at the death of the registered owner cannot be changed so as to add, eliminate, or substitute beneficiaries.

"Upon proof of the death of the registered owner and proof of the survivorship of the beneficiary, even though the beneficiary should thereafter die, the savings bond will be paid or reissued as though the beneficiary had been the registered owner. . . .

"Payment of a savings bond will be made in accordance with a judgment or decree of a court of competent jurisdiction, or proceedings pursuant to such judgment or decree, except in cases where the action is instituted for the purpose of giving effect to an attempted transfer by the owner contrary to Section II, hereof." (Section II is the section above quoted to the effect that the bonds are not transferable.)

Circular 530, as amended June 1, 1942, and in force at the time of the death of George H. Beach, provided: "A bond registered in the name of one person payable on death to another, for example, 'Henry W. Ash, payable on death to John C. Black,' will be paid to the registered owner during his lifetime upon his properly executed request as though no beneficiary had been named in the registration. . . .

"A bond registered in the name of one person payable on death to another may not be reissued during the latter's lifetime to eliminate his name, but may be reissued, on request of the registered owner . . . to name the beneficiary as co-owner. . . .

"If the registered owner dies without having presented and surrendered the bond for payment or authorized reissue to a Federal Reserve Bank or the Treasury Department, and is survived by the beneficiary, upon proof of such death and survivorship, the beneficiary will be recognized as the sole and absolute owner of the bond, and it will be paid only to him, or may be reissued in his name. . . ."

Section 704 of the Civil Code, effective February 10, 1943,

provided: "All United States savings bonds or other bonds or obligations of the United States, however designated, *now* or *hereafter issued,* which are registered in the name of one person payable on death to a named survivor, shall, upon the death of the registered owner, become the sole and absolute property of the surviving beneficiary named therein, unless the Federal laws under which such bonds or other obligations were issued or the regulations governing the issuance thereof, made pursuant to such laws, provide otherwise.

"This section shall not be construed to mean that prior to the enactment hereof the law of this State was otherwise than as herein provided." (Italics added.)

The court found that the money used in purchasing the bonds was decedent's separate property. It was adjudged that plaintiff was the owner and entitled to the possession of the bonds.

Appellant contends that the "payable at death" clause in the bonds is void because it is testamentary; that Congress had no power to insert such a provision in the bonds; that if Congress did have such power it had no right to delegate it to the Treasury Department; that Congress did not exercise such power; that Congress did not delegate such power to the Treasury Department; and that the regulations do not prohibit a change of beneficiary by will.

Those contentions are not sustained. ▮ The Second Liberty Bond Act is a valid exercise by Congress of its constitutional power "To borrow money on the credit of the United States"; the borrowing power necessarily includes the power to fix the terms of the obligation of the United States; the regulations of the Treasury Department, under which the bonds are issued, have the force of federal law; the state cannot vary the terms of federal obligations; a savings bond, issued under the Second Liberty Bond Act and the regulations of the Treasury Department, is a contract obligation of the United States to the owner and to the beneficiary severally. (*Conrad* v. *Conrad,* 66 Cal.App.2d 280, 286 [152 P.2d 221]; and cases cited therein.) In the Conrad case the bonds were payable to coowners, that is, to Mrs. Inman (decedent, who furnished the money) or Mr. Conrad. In the present case the bonds were "payable at death" to the beneficiary, decedent's sister. The court stated in the Conrad case at page 285 that the "majority rule," as shown by cases from other jurisdictions, was that when the coowner of a savings bond,

who furnished the purchase money, died, the bond belonged to the surviving coowner with no interest left in deceased's estate, the question being one of contract under federal regulations which provided for exclusive ownership in the surviving coowner. Relative to the ''payable at death'' clause, it was further stated therein, at page 285, that ''Some of the bonds in those cases [referring to the 'majority rule' cases] were issued to two persons *as coowners,* and others to the purchaser, *and upon his death, to a named beneficiary.* There seems to be no logical distinction to be made between the rights in the bonds of a *surviving coowner* or a suviving beneficiary.'' (Italics added.)

Appellant contends further that section 704 of the Civil Code does not affect her for the reasons that: it is not retroactive; it impairs the obligation of a contract; it invades the judicial function; it deprives her of liberty and property without due process of law; it invades federal jurisdiction; it abridges the privileges and immunities of citizens; it denies the equal protection of the laws; it is void as a special law giving effect to invalid wills; it does not exclude the right to change the beneficiary of the bonds by will; it does not have uniform operation; and it grants special privilege to the Secretary of the Treasury. She contends further that if the bond is a contract and is not void, the sister is a trustee for the widow; that she who comes into equity, must do equity; and if the bond is testamentary in effect, it has been revoked by a subsequent will.

Section 704 of the Civil Code is not in conflict with the federal law, but on the contrary its provisions are in accord therewith, it being provided therein that bonds now or hereafter issued which are payable on death to a named survivor shall, upon the death of the registered owner, become the sole and absolute property of the surviving beneficiary named therein unless the federal laws provide otherwise. Since the beneficiary named in the bonds herein became the owner thereof, if otherwise entitled thereto, under the provisions of the bonds and the federal regulations, it is not necessary to determine whether said section 704 is retroactive, or to determine the other contentions relative to that section.

The statutory right, afforded by the state, to dispose of property by will is not paramount to the power of the federal government to borrow money. If such a statutory power can render nugatory the provisions of the bonds and the rules and

regulations of the Treasury Department, upon which purchasers of the bonds rely, the power of the federal government to raise money will be impaired. The capacity of the federal government to borrow money depends on the inviolability of its obligation, and on its ability to carry it out strictly in accordance with its terms. If the state may treat the bonds as the property of some person other than the one whom the contract has designated, the federal government will be prevented from carrying out its agreement.

The phraseology of the will, directing a change of beneficiary in the bonds and stating ''In case the change is made,'' indicates that Mr. Beach knew it was necessary to comply with rules and regulations in order to make that change, and that there was some question or uncertainty about effecting the change. He lived about 1½ years after he made the will. He had the bonds in his possession over a year preceding his death. It appears that he had ample opportunity to comply with the rules and regulations, and effect the change which he stated he desired to make.

Appellant contends further that the evidence was insufficient to support the finding that the money used in purchasing the bonds was decedent's separate property. She asserts that the money so used was community property. At the trial she stated that she would rely solely upon the presumption that property acquired during the marriage is community property. She offered no evidence in addition thereto. There was evidence as follows: Decedent's mother died in 1927, and her estate of approximately $22,000, consisting of $8,198.38 in cash and the balance in mortgages, was distributed in 1929 in equal parts to her five children, the decedent receiving property in excess of a value of $4,000. On June 11, 1929, decedent started a bank account in his name in the California Bank with a deposit of $1,639.70, which was approximately 1/5 of the $8,198.38 cash which was distributed. Also on said date he started another account in his name in the Bank of Italy, depositing $504.49. On July 22, 1929, he deposited $489.69 therein. At various times when the amounts of the mortgages which were a part of the estate were collected, decedent received his proportionate share thereof. On September 4, 1929, a further amount of $301.75 was distributed to decedent as his share of a further distribution, and on that day he deposited that amount in said Bank of Italy account. On June 30, 1930, his balance in the Bank of Italy,

including accrued interest, was $1,347.67. On the next day, July 1, 1930, he withdrew $1,710 from the California Bank account, being the amount of the deposit of $1,639.70 and interest thereon, and deposited it in the Bank of Italy account, making a balance there of $3,057.67. On August 30, 1930, he deposited $3,057.67 in the Bank of America in an account entitled, ''Geo. H. Beach or Della B. Purmort,'' apparently being the money which had been on deposit in the Bank of Italy. Della B. Purmort is his sister. No other deposits were made in the Bank of America account, and on December 30, 1930, the balance therein of $3,126.48, including accrued interest, was withdrawn. It does not appear that this amount was redeposited in a bank. On September 9, 1931, an account entitled, ''Geo. H. Beach or Della B. Purmort,'' was started in the Security-First National Bank with the sum of $618.81. Other deposits were made therein as follows: $566 on February 13, 1932, $379.67 on September 1, 1932, and $2,612.50 on August 1, 1934. On that last mentioned date the balance in the account, after certain withdrawals, was $3,496.41. That balance remained unchanged until April 1, 1936, when that balance and the accrued interest of $90.20, a total of $3,586.61, was withdrawn. On April 7, 1936, the bonds were purchased at a postoffice in the presence of respondent. In his will decedent stated, as above shown, that he had invested his share of his mother's estate in the bonds. Respondent testified, over appellant's objection, that decedent told her on the day the bonds were purchased that he was going to buy the bonds with the money from his mother's estate, which money was in the Security Bank, that he was going to make respondent the beneficiary and he wanted her to keep his ''mother's money'' in that state.

Irrespective of whether the testimony of respondent, as to what decedent said to her about the source of the funds, should have been received, the evidence otherwise was sufficient to support the finding that the money used to purchase the bonds was decedent's separate property. In the *Estate of Tompkins,* 123 Cal.App. 670 [11 P.2d 886], it was contended that certain property was separate property of a deceased husband, it being claimed that he purchased it with money inherited by him. The widow contended that the trustees of the estate, who asserted that the property was separate property, were required to identify each item as property acquired with inherited money. The court said at pages 675 and 676: ''Proof

should consist of the best evidence reasonably obtainable, but the law does not exact the impossible; and it must be remembered that the widow had been in possesion of her husband's records after his death, but testified that they had been lost in some way. Circumstantial as well as direct evidence is receivable, and legal proof is that made by a preponderance of the evidence under all the facts and circumstances as presented in each individual case. Upon the submission of the controversy, it is then for the court to draw its reasonable inferences from all the evidence adduced, bearing in mind the rule that to dissipate the naked legal presumption in behalf of the community right, there need be exhibited only 'such legal evidence as, under all the circumstances of the particular case, would ordinarily produce conviction in an unprejudiced mind.' "

The judgment is affirmed.

Desmond, P. J., and Shinn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 27, 1946. Edmonds, J., and Carter, J., voted for a hearing.