35 So.2d 348

**CHAMBLESS v. BLACK et al.**

**8 Div. 417.**

Supreme Court of Alabama.

April 15, 1948.

Rehearing Denied May 20, 1948.

Wm. C. Rayburn, of Guntersville, for appellant.

Marion F. Lusk, of Guntersville, for appellees.

LAWSON, Justice.

The appeal is to review a decree in equity upon final settlement of the estate of J. G. Chambless, deceased.

Mr. Chambless died intestate, leaving a rather large estate, consisting of real and personal property. There were no lineal descendants. His widow, Mrs. Sallie B. Chambless, survives. She possessed at his death a statutory separate estate consisting of both real and personal property. Personal property exemptions were awarded the widow, as were her homestead rights.

The first contention made is that since there were no children, the trial court erred in not holding that the widow, Sallie B. Chambless, was entitled to all of the personal estate. Reliance is had upon § 10, Title 16, Code 1940, which reads in pertinent part as follows:

"The personal estate of persons dying intestate as to such estate, after the payment of debts and charges against the estate, is to be distributed in the same manner as his real estate, and according to the same rules; *except that the widow, if there are no children, is entitled to all the personal estate,* * * *." (Emphasis supplied.)

These same provisions were included in § 1462 of the Code of 1896.

We cannot agree with this contention inasmuch as where there is present a surviving widow, an estate out of which dower may be taken and personalty distributed, and the widow possesses a separate estate, cognizance must be taken of the provisions of §§ 42, and 43, Title 34, Code of 1940.

Section 42, Title 34, supra, is as follows:

"If any woman having a separate estate survive her husband, and such separate estate, exclusive of the rents, incomes, and profits, is equal to, or greater in value than her dower interest and distributive share in her husband's estate, estimating her dower interest in his lands at seven years' rent of the dower interest, she shall not be entitled to dower in, or distribution of, her husband's estate."

This is the exact language of § 1506, Code 1896.

Section 43, Title 34, supra, is as follows:

"If her separate estate be less in value than her dower, as ascertained by the rule furnished by the preceding section, and her distributive share, so much must be allowed her as, with her separate estate, would be equal to her dower and distributive share in her husband's estate, if she had no separate estate."

This is the identical language of § 1507, Code 1896.

This question was definitely decided in the case of Guice v. Guice, 150 Ala. 552, 43 So. 199, and was reaffirmed in Merchants Nat. Bank of Mobile v. Hubbard, 222 Ala. 518, 133 So. 723, 74 A.L.R. 646.

In Guice v. Guice, supra, where this question was considered and when the Code of 1896 was in effect, it was said:

"* * * Section 1505 [§ 41, Title 34, Code 1940] fixes the extent of the dower interest, and sections 1506 [§ 42, Title 34, Code 1940] and 1507 [§ 43, Title 34, Code 1940] relate to the effect of the possession of a separate estate upon dower and distribution. It is manifest that sections 1506 and 1507 are not distinct laws. It is also apparent that, while they may work exceptions to the law of dower and distribution, as that law is found in sections 1505 and 1462 [§ 10, Title 16, Code 1940] of the Code, they are parts of a harmonious system. Sections 1506 and 1507 assert the effect of two conditions upon the dower and distributive rights of a surviving widow. The former declares what shall be the effect when the value of the separate estate owned by the widow equals or exceeds in value the dower interests (estimated as therein provided) and the distributive share. The latter section declares what shall be done when the value of such separate estate is less than the value of the dower interest and distributive share. To state their meaning more clearly, the former (section 1506) directs that when the value of the separate estate of the widow, less rents, incomes, and profits, is equal to or greater than the sum of the estimated value of the dower interest and the value of the distributive share, then she is entitled to no right of dower in or distribution of her husband's estate. The latter (section 1507) directs that, when such separate estate is less than the sum of the values of the estimated dower interest and distributive share, she shall be allowed so much as will, when added to the value of her separate estate, equal the value of her estimated dower interest and distributive share. Dubose v. Dubose, 38 Ala. 238.

"The intent of the Legislature was to correct the injustice of allowing a widow the full bounty prescribed when she has in her own right a separate estate of greater or equal or less value than the personality distributable to her and the dower interest as fairly estimated. This purpose appears plain. These sections do not contemplate a case where there is no possible dower interest, nor a case where there is no personalty to be distributed. But they do contemplate all cases where there is present a surviving widow, an estate out of which dower may be taken and personalty distributed, and the widow possesses a separate estate. The absence of any one or more of these elements defeats the application of these statutes (sections 1506 and 1507) to such case." 150 Ala. at pages 556, 557, 43 So. at page 200.

■ We hold, therefore, that although no children survived the intestate, since there was an estate out of which dower could be taken and personalty distributed and the surviving widow possessed a separate estate, she was not entitled to all the personal estate.

■ It is next contended that the trial court erred in fixing the value of the widow's separately owned real estate. In determining a widow's right to dower and to share in the distribution of her husband's estate, the value of her separate estate must be computed as of the time of his death. Billingslea v. Glenn, pro ami, 45 Ala. 540.

At the time of her husband's death, Mrs. Chambless owned a one-half interest in a farm located in Jackson County, which was purchased a few years prior to the death of Mr. Chambless for the sum of sixteen thousand dollars. Mrs. Chambless's interest at the time of purchase was valued at eight thousand dollars. Approximately one year after the death of intestate, this farm was sold and Mrs. Chambless received from such sale the sum of $16,480.87. The trial court found that such was the value of her interest in the farm at the time of her husband's death and we think such finding is fully supported by the evidence.

■ But the widow contends that her interest in this property should have been valued at only eight thousand dollars, as that was the price she paid for it and that any increase in value prior to the death of her husband should be considered as "profit," as that term is used in § 42, Title 34, Code 1940. We cannot agree with this contention. It is true that under the terms of § 42, Title 34, supra, the valuation of a widow's separate estate must be "exclusive

of the rents, incomes, and profits." But this exclusion clause relates to the returns which the widow receives from her property after her husband's death and does not affect any increase in value subsequent to the time she secured the property and prior to the husband's death.

At the time of the death of Mr. Chambless, United States Government bonds, Series E, with value at maturity of $3300, were located in a safety deposit box at the "Citizens Bank." This box was rented by Mrs. Chambless and only one key was given her, which she kept in her possession, but it was used by the decedent as well as by Mrs. Chambless. Some of these bonds were payable to "James G. Chambless or Mrs. Sallie B. Chambless," while others were payable to "J. Gilbreath Chambless or Mrs. Sadie Hugh Chambless." It seems to be admitted that James G. Chambless and J. Gilbreath were one and the same person, the decedent, and that the names "Mrs. Sallie B. Chambless" and "Mrs. Sadie Hugh Chambless" had reference to his widow, the appellant in this case. There is no evidence as to who furnished the money with which to purchase the bonds.

The widow seems to have taken the position that such bonds were not part of her separate estate but belonged to the estate of her husband. This somewhat unusual position must have been taken because if the bonds are considered a part of the widow's separate estate, that estate would be so large that she would receive comparatively little from the estate of her husband.

The trial court held that the bonds were a part of the separate estate of the widow, appellant.

The exact question has not been presented to this court heretofore, but the conclusion of the trial court appears to be supported by the cases from most jurisdictions where the question has been decided. In re Murray's Estate, 236 Iowa 807, 20 N.W.2d 49; Conrad v. Conrad, 66 Cal. App.2d 280, 152 P.2d 221; Ervin v. Conn, 225 N.C. 267, 34 S.E.2d 402; In re Schubert's Estate, Sur., 63 N.Y.S.2d 27. To like effect are the following cases: Succession of Tanner, La.App., 24 So.2d 642; Ibey v. Ibey, 93 N.H. 434, 43 A.2d 157;

Davies v. Beach, 74 Cal.App.2d 304, 168 P. 2d 452; In re DiSanto's Estate, 142 Ohio St. 223, 51 N.E.2d 639.

In the case of In re Murray's Estate, supra [236 Iowa 807, 20 N.W. 2050], the question was presented as to whether the estate of E. J. Murray or his widow, Mary E. Murray, was entitled to ten $1000 Government bonds, Series E, which were payable to "E. J. Murray or Mary E. Murray," and which were purchased by decedent with his own funds during his lifetime. At the trial of the case, the district attorney for the northern district of Iowa, at the direction of the Attorney General of the United States, filed a suggestion of interest of the United States in the litigation, asserting:

"The case involves the ownership of certain U. S. Savings Bonds, issued under the Second Liberty Bond Act as amended by the Public Debt Act of 1941, 31 U.S.C.A. §§ 757b, 757c, and circulars and regulations promulgated thereunder by the Secretary of the Treasury; the United States, as obligor under said bonds, has a direct interest in the determination of the ownership thereof in accordance with the federal statutes and Treasury regulations applicable thereto; the salability of such bonds, in accordance with such statutes and regulations, is vital to the ability of the Government to borrow money on favorable terms; the co-ownership provisions thereof have promoted the sale of such bonds; co-ownership registrations constitute 75% of all Savings Bonds sold; the United States has the power to borrow money on such terms as it may fix and, under the Supremacy clause of the U. S. Constitution, Art. 6, cl. 2, such power cannot be impaired by state law; under the laws, rules and regulations aforesaid, the bonds, made payable to Mary E. Murray without any co-payee, are payable to her alone, and the bonds made payable to her as co-owner are payable to her as such; the Treasury regulations are reasonable, within the power of the Secretary, have the force and effect of law and are final and controlling on the rights of the parties herein as a part of the contracts made by the Government; the widow is the sole and absolute owner of said bonds; is the per-

608

son to whom the United States is obligated and the estate of Edward J. Murray has no interest whatsoever in said bonds or the proceeds thereof."

The prayer of the petition for intervention was that the court so declare. Intervention was permitted.

The Iowa trial court determined that the bonds were owned by the widow, Mary E. Murray. The Supreme Court of Iowa affirmed in an opinion written for the court by Mr. Chief Justice Miller. In the opinion are set out the following provisions contained in the bonds:

"This is a defense Savings Bond of Series E, of an issue of United States Savings Bonds authorized by the Second Liberty Bond Act as Amended, and issued pursuant to Treasury Department circular No. 653, dated April 15, 1941, to which reference is made for a statement of the rights of holders, as fully and with the same effect as though herein set forth.

"This bond is not transferable; and, except as provided under said circular, it is payable, at maturity or on earlier redemption, only to the registered owner and upon the presentation and surrender of this bond with the request for payment on the back hereon duly executed, all in accordance with the provisions of said circular and the regulations prescribed from time to time thereunder."

The opinion also sets out a number of the provisions referred to in that portion of the bonds quoted from. One of such provisions is as follows:

"If either coowner dies without having presented and surrendered the bond for payment to a Federal Reserve Bank or the Treasury Department, the surviving coowner will be recognized by the Treasury Department as the sole and absolute owner of the bond, and payment will be made only to him; * * *."

After referring to and quoting from many authorities, the opinion on this point concludes:

"Pursuant to the authorities above reviewed, we hold that the widow is the owner of the twenty $1000 Savings bonds herein and that her title thereto is derived from the contractual rights and obligations evidenced by such bonds, when considered with the Treasury regulations which are incorporated therein. The trial court's decision was therefore correct."

We are in accord with the conclusion reached by the Supreme Court of Iowa in Re Murray's Estate, supra, and hold that the trial court correctly held that the bonds here in question were a part of the widow's separate statutory estate, even though such bonds may have been purchased by Mr. Chambless, the decedent, with his own funds during his lifetime. Her title was derived from contractual rights and hence the bonds were properly considered as a part of her separate estate.

During the trial of this case below, as to this point, both sides seem to have dealt solely with the question as to whether the bonds were a part of the widow's separate statutory estate or were a part of the decedent's estate. The question of the value of the bonds at the time of the decedent's death was not gone into. No evidence was presented tending to show the redemption value of the bonds at the time of the death of Mr. Chambless. In fixing the value of the widow's separate estate, the trial court valued the bonds as of their value at maturity.

On application for rehearing filed by the widow, appellant, under Equity Rule 62, Code 1940, Tit. 7 Appendix, this question was called to the trial court's attention. The trial court refused to modify the decree in that regard, inasmuch as the parties during the trial of the case had made no effort to show the value of the bonds at the time of decedent's death. Since the parties elected to try the case as they did and the trial court, in the exercise of its discretion, did not see fit to modify the decree in that regard, no reversible error is here presented.

We have dealt with all questions presented in brief of counsel for appellant and, finding no reversible error, the decree is affirmed.

Affirmed.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.