In the Matter of the Estate of WILLIAM J. LAUNDREE, Deceased.

Surrogate's Court, Queens County, July 13, 1949.

*Charles Margett* for Catherine Laundree, as administratrix of the estate of William J. Laundree, deceased.

*John P. Judge* for Edward A. Laundree, respondent.

SAVARESE, S. William J. Laundree purchased United States Savings Bonds, Series E, of the maturity value of $1,950, which he had registered in his name as owner and made payable on his death to his brother. He died on November 17, 1946, intestate and was survived by his widow and a daughter. At his death three of the bonds, of the face value of $150, were in the posses-

sion of his brother, the named beneficiary. The remaining bonds were found among his effects and came into the possession of the administratrix, his widow. On her refusal to surrender them decedent's brother instituted a proceeding under section 206-a of the Surrogate's Court Act to compel her to do so. Thereafter the administratrix brought this discovery proceeding against him for a decree that all the bonds or the value or proceeds thereof be declared to be the property of the estate, that he be directed to pay over to her the value or the proceeds of the bonds in his possession and that a trust be impressed thereon. When the matter came on for a hearing the parties, without presenting any proof, stipulated on the record that the assets left by the decedent amounted to $175; that he was indebted to the Department of Mental Hygiene of New York in the sum of $600 for maintenance and medical care of his son for a period of two years preceding his death; that his funeral expenses of $773.01 were unpaid and that he was insolvent at the time of his death. The allegation in the administratrix' petition that respondent furnished no part of the consideration for the purchase of the bonds has not been denied and is, therefore, deemed admitted by him. The controversy requires a determination of the right of the administratrix to recover the proceeds of the bonds from the respondent upon the ground that Laundree, the decedent, made a voluntary transfer which rendered him insolvent at his death and was, therefore, fraudulent as to his creditors.

United States Savings Bonds are issued under the authority of section 22 of the Second Liberty Bond Act, as amended (U. S. Code, tit. 31, § 757c.). It is therein provided that " (a) The Secretary of the Treasury, with the approval of the President, is authorized to issue, * * * United States savings bonds * * *. The various issues and series * * * shall be issued in such manner and subject to such terms and conditions * * * as the Secretary of the Treasury may from time to time prescribe." Pursuant to this statutory authority the Secretary of the Treasury has promulgated certain regulations governing the registration, transfer, payment, and redemption of such bonds. (Code of Fed. Reg., 1945 Supp. tit. 31, §§ 315.1–315.63.) The general regulations as to all United States bonds are contained in Department Circular No. 530, Sixth Revision, dated February 13, 1945. Savings bonds are issued only in registered form, and the form of registration is considered to be conclusive of the ownership and interest therein, except as otherwise specifically provided by the regulations (§ 315.2). A purchaser of Series E bonds

may register them in the name of a sole owner, two co-owners, or an owner and a beneficiary (§ 315.4). A savings bond registered in the name of one person payable on death to another will be paid to the registered owner during his lifetime upon his properly executed request as though no beneficiary had been named in the registration (§ 315.46, subd. [a]). Although the owner may redeem the bonds at his option, he may not eliminate or change the beneficiary without his consent (§ 315.46, subd. [b], par. [2]). If the registered owner dies without having presented and surrendered the bond for payment or authorized reissue and is survived by the beneficiary, upon proof of such death and survivorship, the beneficiary will be recognized as the sole and absolute owner of the bond, and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor (§ 315.46, subd. [c]).

In the initial consideration had in this State of the nature of the legal interest created in bonds in the beneficiary form it was held that the proceeds of the bonds belonged to the estate of the deceased owner for the reason that the transaction was invalid as a gift and as a disposition of property to take effect after death, and that the regulations concerning the manner of issue and payment of the bonds did not preclude the application of the laws of this State determining the validity of the devolution of property. (*Deyo* v. *Adams,* 178 Misc. 859.) Subsequent to this decision there was added by chapter 632 of the Laws of 1943, effective April 19, 1943, section 24 to the Personal Property Law which provides as follows: " Where any United States savings bond is payable to a designated person, whether as owner, co-owner or beneficiary, and such bond is not transferable, the right of such person to receive payment of such bond according to its terms, and the ownership of the money so received, shall not be defeated or impaired by any statute or rule of law governing transfer of property by will or gift or an intestacy, provided, however, that nothing herein shall limit article ten of the debtor and creditor law or section one hundred twenty-four of the decedent estate law.'' The section was recommended by the Law Revision Commission. A legislative note annexed to the bill states that '' Its purpose is to remove doubts, resulting from the decision in *Deyo* v. *Adams,* (178 Misc. 859 (1942) as to the rights of owners, co-owners and beneficiaries designated in nontransferable United States Savings Bonds. The removal of these doubts will assure purchasers of such bonds that the persons designated by them as payees will receive the money.'' (N. Y.

Legis. Doc., 1943, No. 65 [M], p. 3.) After the enactment of the statute the executrix, who was the plaintiff in the action of *Deyo* v. *Adams* (*supra*), then pending in the Supreme Court, brought a proceeding in the Surrogate's Court of New York County to compel her coexecutor to take no position adverse to that taken by her in the Supreme Court action. Surrogate FOLEY, in denying the application, disagreed with the views expressed in *Deyo* v. *Adams* (*supra*), and held that the bonds were not assets of the deceased owner's estate but belong to the surviving beneficiary. (*Matter of Deyo,* 180 Misc. 32.) The courts throughout the country generally have been sustaining as matters of Federal law and contract the rights of surviving beneficiaries and co-owners established by the savings bond regulations. (See cases collected in 168 A. L. R. 245.) Since the enactment of section 24 of the Personal Property Law bonds issued in the beneficiary form, on the death of the purchaser, have uniformly been held not to be assets of his estate and to belong to the surviving beneficiary. (*Matter of Deyo,* 180 Misc. 32, *supra*; *Matter of Karlinski,* 180 Misc. 44, 49; *Matter of Hager,* 181 Misc. 431; *Matter of Amols,* 184 Misc. 364; *Matter of Kalina,* 184 Misc. 367, appeal dismissed 270 App. Div. 761; *Matter of Staheli,* 57 N. Y. S. 2d 185, affd. 271 App. Div. 788.)

None of the cited cases deals with the rights of creditors where the purchaser dies insolvent. The Law Revision Commission in recommending the enactment of section 24 of the Personal Property Law stated: " However, in any legislation designed to protect the payees' rights, it should be made clear that any rights against fraudulent conveyances, which the creditors of the buyer may, have, are not affected." (N. Y. Legis. Doc., 1943, No. 65 [M], p. 6.) This recommendation is reflected in the final clause of the statute which provides, " * * * that nothing herein shall limit article ten of the debtor and creditor law * * *."

The only case in this State considering the rights of creditors and those of the beneficiary where the purchaser died insolvent is *Jacoby* v. *Loewenberg* (N. Y. L. J., Feb. 13, 1947, p. 590, col. 3). There the widow brought an action on a separation agreement against the executor of her deceased husband and her son as the recipient of certain property which she claims was fraudulently transferred. The complaint contained three causes of action. The first cause of action was to recover the sum of $30,500 for unpaid installments under the separation agreement. The plaintiff was awarded judgment thereon and thereby established her

position as a creditor. The second cause of action related to the purchase by decedent of United States Savings Bonds in the sum of $8,850 between December, 1941, and the date of his death, which were registered in the joint names of decedent and the individual defendant. The plaintiff alleged that at the time of his death decedent was insolvent and that no consideration passed from defendant to decedent for the bonds. The third cause of action pleaded the same facts except that it alleged insolvency at the time of the purchase. The proof disclosed that $1,450 of the bonds were payable to decedent and on his death to his son and that the balance was made payable to either of them. While the court held that the plaintiff individually could not bring an action to set aside the fraudulent transfer it proceeded at the instance of the executor, who sought a determination of the ownership of the bonds, to adjudicate the question. In his opinion STEUER, J., said: '' There is no proof that decedent was insolvent at any time prior to his death. * * * At his death, however, he was insolvent. As to the bonds payable to the decedent and at his death to defendant, it is true that they do not pass by way of his estate (Re Deyo's Estate, 180 Misc., 32), but transfer did not become effectual until death. As to these, therefore, the transfer was in fraud of creditors.'' There are two reported cases in which a contrary result was reached. (*Reynolds* v. *Danko,* 134 N. J. Eq. 560; *Matter of Briley,* 155 Fla. 798.) In each case the bonds were registered in beneficiary form and the assets of the decedent were insufficient to satisfy the claims of creditors. In the former case the Vice Chancellor, in holding that there was no fraudulent conveyance within the meaning of the New Jersey statute said (pp. 561–562) : '' There was no change in the amount of decedent's assets by reason of his bond purchases as he simply exchanged cash for bonds. He did not part with any assets by that transaction. His financial worth was not depleted or cut down by the purchases. If anything, it was improved by the conversion of cash into government securities which increased in value as time went on. There was no transfer. The assets represented by the bonds remained under the control of the decedent as a matter of law. * * * During his lifetime he was both the legal and the equitable owner thereof. In the next place there was no fraud shown. The complainants argue that the decedent concealed his ownership in the bonds with the object of defrauding his creditors. This may be or may not be so. There is no affirmative proof that the decedent had a fraudulent purpose in mind. Actual fraud cannot be presumed, it must be proved.

\* \* \* Although the decedent was, in his lifetime, the sole owner of the bonds in question, his title as such owner terminated on his death and the defendant, as the beneficiary named in the respective bonds, thereupon became the sole and absolute owner.'' While the Surrogate agrees with the court's analysis of the rights of the purchaser in his lifetime, he cannot agree that there was no transfer or that actual fraud must be proved. In view of the fact that the purchaser can redeem the bonds in his lifetime without the consent of the beneficiary it may be said that he remains the owner thereof. A creditor who has reduced his claim to judgment may, through the intervention of a receiver and during the lifetime of his debtor, enforce the latter's right to receive payment. (Cf. *Iowa Methodist Hosp.* v. *Long*, 234 Iowa 843.) The owner of a bond in beneficiary form, in the event of his bankruptcy, can be compelled to surrender the same to his trustee. (*Matter of Bartlett*, 71 F. Supp. 514.) The fact that the purchase of the bonds produced no diminution of the debtor's assets or affected the creditor's resort thereto does not establish that there was no transfer. The incorporation of the name of the beneficiary in the bond was the act of the purchaser and conferred a right on him. This right, in view of the power of the purchaser to redeem, was destructible and not enforcible until his death. Viewed in the light of the relative rights of the purchaser and the beneficiary it seems to me that there could be no effective or operative transfer of title to the bonds until the death of the purchaser. Up and until that time the transaction was ambulatory. Thus, at the time when he intended the transfer should and did become effective the transferor had thereby rendered himslf insolvent. Where a debtor makes a voluntary conveyance of property without fair consideration while an indebtedness is outstanding, the presumption arises that he was insolvent at the time of the transfer. (*Cohen* v. *Benjamin*, 246 App. Div. 866; *Campbell* v. *Brown*, 268 App. Div. 324, appeal dismissed 294 N. Y. 702; Debtor and Creditor Law, §§ 270, 271, subd. 1; §§ 272, 273.) Such a conveyance is fraudulent as to creditors without regard to actual intent. (*Kerker* v. *Levy*, 206 N. Y. 109; *Chase Nat. Bank* v. *United States Trust Co.*, 236 App. Div. 500; *Horowitz* v. *Weinberg*, 156 Misc. 629, affd. 246 App. Div. 701.) The rule is that a transfer without consideration by one who is then a debtor raises a presumption of fraud. The creditor may stand upon that presumption until it is repelled. (*Ga Nun* v. *Palmer*, 216 N. Y. 603, 611.) In *Hearn 45 St. Corp.* v. *Jano* (283 N. Y. 139, 142), the court, in discussing the Uniform Fraudulent Conveyance Act as enacted in article 10 of the Debtor and Creditor Law, said:

" The object of this legislation is to enable a creditor to obtain his due despite efforts on the part of the debtor to elude payment. To that end the statute declares as of no effect in so far as the creditor is concerned, certain kinds of transfers on the part of the debtor. These transfers are generally of two kinds: those made by the debtor with the actual intent thereby to impede or altogether defeat the efforts of the creditor and those which, regardless of the intention of the debtor, in fact operate to make the debtor insolvent and so defeat the claims of the creditor. The latter are transfers made without consideration or without fair consideration, which render the debtor insolvent. As to those, it is the policy of the law that the debtor be just before he be generous. By the terms of the statute, either kind of transfer is declared fraudulent as to creditors, i.e., the transfer is in violation of the creditor's rights." While the bond is a contract for the benefit of a donee beneficiary, and not a trust, his rights and those of the purchaser bear some resemblance to those of a trustee and a beneficiary of a Totten trust. The depositor can draw out the money and do with it as he pleases. Here the owner may redeem the bond and do likewise. Neither has to consult the beneficiaries who cannot exercise any incidents of ownership during the lifetime of the depositor and the owner. Creditors can resort to the deposit and the bond in the lifetime of the depositor and the purchaser. It has been said that it is " contrary to sound public policy to permit a person to have the absolute and uncontrolled ownership of property for his own purposes, and to be able at the same time to keep it from his creditors." (*Hallett* v. *Thompson,* 5 Paige Ch. 583, 586, cited in *Ullman* v. *Cameron,* 186 N. Y. 339, 346; *Beakes Dairy Co.* v. *Berns,* 128 App. Div. 137; *Katz* v. *Driscoll,* 86 Cal. App. 2d 313, 321.)

In the *Briley* case (155 Fla. 798, *supra*), the court held that the donee provision was valid against creditors of the deceased purchaser's estate upon the ground, among others, that the bond constituted a contract for the beneficiary and was enforcible by him irrespective of State law governing the distribution of estates. The court did not discuss the question whether or not there was a fraudulent transfer. The Treasury regulations, as heretofore stated, provide that the surviving beneficiary will be recognized as the sole and absolute owner of the bond. It does not seem to me that the regulations were intended to prevent a legal representative from pursuing, in the interests of creditors, the proceeds of bonds fraudulently transferred to a beneficiary without consider-

ation. In *Katz* v. *Driscoll* (*supra*) the court (p. 322) said: " The purpose of the treasury regulations is to protect and hold the federal government immune from any attack on its performance of the contract as made in the bond. In other words, they are designed to prevent the implication of the government in any disputes concerning ownership of the bonds, protect it from any suits which might result from payment to a designated beneficiary or coowner, and, for the purpose of promoting sales, guarantee the performance of the government in strict accord with the contract.

" These laws and regulations are not intended to confer on the beneficiary the right to retain permanently the proceeds from the bonds irrespective of fraud or any illegality in the manner in which the bonds were obtained. To hold otherwise would, in effect, say that the treasury regulations not only guarantee payment to the named beneficiary, but, thereafter, when he receives the proceeds, follow him around indefinitely, and, like a protective halo, render him completely immune from any ordinarily legitimate claims thereto. For the purpose of payment and performance of the government's contract obligation, the beneficiary is recognized as the ' sole and absolute ' owner. But the rights of survivorship conferred by these [treasury] regulations upon a surviving coowner or beneficiary (§ 315.13 (1)) terminate there." At pages 320–321 the court also said: " Even in the case of fraud, the contract made by the government with the bond purchaser to pay his survivor cannot be changed or interfered with, but principles of equity and fair dealing require that the person benefiting by such fraud may be required to disgorge the proceeds of such fraud independently of the contract between him and the federal government, and without interference in its performance." I am in accord with the views thus expressed. I, therefore, find and determine that the bonds in controversy were fraudulently transferred by the decedent to the respondent without consideration and accordingly direct that respondent execute within ten days the required instruments to redeem same and surrender the proceeds thereof to the petitioner within five days of the receipt thereof. (See *Union Nat. Bank* v. *Jessell*, 215 S. W. 2d 474 [Mo.].) The administratrix is directed to retain the proceeds pending the settlement of her account and to cite the respondent and all other persons interested therein. Proceed accordingly.