67 So.2d 818

### Ex parte LITTLE.

### 7 Div. 176.

Supreme Court of Alabama.

Oct. 29, 1953.

Chas. Douglas, Anniston, for petitioner.
Merrill, Merrill, Vardaman & Matthews, Anniston, for respondent.

GOODWYN, Justice.

Mrs. Rose Little, petitioner herein and widow of the decedent, Forney L. Little, claims title to sixteen United States savings bonds, of a total face value of Fifteen Hundred Twenty-Five Dollars ($1,525.00) registered in the name of "Forney L. Little or Willard Little," Willard Little being the brother of Forney L. Little. The bonds were issued prior to the marriage of petitioner to Forney L. Little, and, as alleged by petitioner, she married the decedent upon consideration of his promise to give the bonds to her. After the marriage, decedent consummated his promise and delivered the bonds to his wife. In less than two years after the marriage, Forney L. Little died, and by his will provided:

> "I give, devise and bequeath all my property, both real and personal which I may own or be entitled to at the time of my death, to my wife, Rose Little."

After the death of Forney L. Little, his brother, and the registered co-owner of the bonds in question, Willard Little, brought an action of detinue against petitioner seeking recovery of the bonds. Petitioner then filed a motion to have the case transferred to equity. Demurrer to the petition taking the point that petitioner is not shown to have an equitable right in or defense to the detinue action, was sustained. This is a petition for mandamus to

compel transfer of the case from the law side to the equity side of the court.

To dispose of this case it is necessary to determine whether the purchaser of co-ownership United States savings bonds can transfer the bonds by (1) will or (2) by contract. Such bonds are authorized under the Second Liberty Bond Act, as amended by the Public Debt Act of 1941, 31 U.S.C.A. §§ 757b, 757c. Sect. 757c provides as follows:

"(a) The Secretary of the Treasury, with the approval of the President, is authorized to issue, from time to time, through the Postal Service or otherwise, United States savings bonds and United States Treasury savings certificates, the proceeds of which shall be available to meet any public expenditures authorized by law, and to retire any outstanding obligations of the United States bearing interest or issued on a discount basis. The various issues and series of the savings bonds and the savings certificates shall be in such forms, shall be offered in such amounts, subject to the limitation imposed by section 757b of this title, and shall be issued in such manner and subject to such terms and conditions consistent with subsections (b), (c), and (d) hereof, and including any restrictions on their transfer, as the Secretary of the Treasury may from time to time prescribe."

All of the bonds are of Series E. Each contains a provision that it is issued "pursuant to Treasury Department Circular No. 653, second revision, and is subject to the terms and conditions thereof and the regulations prescribed thereunder as fully as if herein set forth," and, further, that "This bond is not transferable; and, except as provided in said regulations, it is payable only to the registered owner."

Treasury Department Circular No. 653 provides as follows:

"Bonds of Series E will not be transferable, and will be payable only to the owner named thereon, except in case of death or disability of the owner or as otherwise specifically provided in the regulations governing savings bonds, and in any event only in accordance with said regulations. Accordingly, after they are duly issued they may not be sold, discounted, hypothecated as collateral for a loan or the performance of a service, or disposed of in any manner other than as provided in the regulations governing savings bonds, and except as provided in said regulations, the Treasury Department will recognize only the inscribed owner, during his lifetime, and thereafter his estate or heirs."

Pursuant to the authority given him, 31 U.S.C.A. § 757c, supra, the Secretary of the Treasury has promulgated regulations governing the transfer and payment of United States savings bonds. Treasury Department Circular 530, Sixth Revision, 31 C.F.R. Sect. 315. As regards the payment and ownership of co-ownership bonds when one co-owner dies, Sect. 315.45 of Circular 530, 31 C.F.R., supra, provides as follows:

"§ 315.45 Payment or reissue. A savings bond registered in the names of two persons as coowners in the form, for example, 'John A. Jones or Mrs. Mary C. Jones,' will be paid or reissued as follows:

\* \* \* \* \* \*

"(c) If either coowner dies without having presented and surrendered the bond for payment or authorized reissue, the surviving coowner will be recognized as the *sole and absolute owner* of the bond and payment or reissue, as though the bond were registered in his name alone, will be made *only* to such survivor." [Emphasis supplied.]

It appears to be clearly established that a savings bond is a contract between the federal government and the purchasers, U. S. v. Dauphin Deposit Trust Co., D.C., 50 F.Supp. 73, Succession of Tanner, La.App., 24 So.2d 642; Ervin v. Conn, 225 N.C. 267, 34 S.E.2d 402, and that the rights of the survivor of the co-owners of a bond arise solely from contract. Chambless v. Black, 250 Ala. 604, 35 So.2d 348. It is also clear that the Treasury regulations are incorporated into such contract by reference, and

are beyond reach of state law to modify or destroy. Davies v. Beach, 74 Cal.App.2d 304, 168 P.2d 452; Ervin v. Conn, supra; In re Briley's Estate, 155 Fla. 798, 21 So.2d 595.

The position taken by the Federal government with respect to the statutes and regulations referred to is shown in the case of In re Murray's Estate, 236 Iowa 807, 20 N.W.2d 49. That case was later quoted extensively and approvingly by this court in Chambless v. Black, supra. In both cases the question was whether savings bonds payable to the decedent or his widow were part of decedent's estate or were part of the widow's separate estate. In the Murray case the court allowed the federal government to intervene (see suggestion of interest of the United States filed in the Murray case and quoted in the Chambless case, supra, 250 Ala. 607, 35 So.2d 350, 352), and held that the widow was entitled to the bonds as a part of her separate estate. In approving the Murray case, this court, in the Chambless case, stated:

"We are in accord with the conclusion reached by the Supreme Court of Iowa in Re Murray's Estate, supra, and hold that the trial court correctly held that the bonds here in question were a part of the widow's statutory estate, even though such bonds may have been purchased by Mr. Chambless, the decedent, with his own funds during his lifetime. Her title was derived from contractual rights and hence the bonds were properly considered as a part of her separate estate."

The effect of the holding in the Chambless case is that a surviving co-owner of savings bonds takes title thereto as the *sole* owner by reason of the Treasury regulations incorporated into the contract between the Federal government and the purchaser of the bonds.

The petitioner, however, contends that the restrictions on transfer of savings bonds do not restrict a transfer by will or by valid contract. To support her claim that a transfer by will is excepted from the Treasury Department Regulations, petitioner relies on the case of Dietzen v. American Trust & Banking Co., 175 Tenn. 49, 131 S.

W.2d 69. In that case the court held, as petitioner contends, that United States savings bonds can be the subject of a gift causa mortis, but the court in that case was not concerned with co-ownership bonds or the survivorship regulations of § 315.45(c) of Tit. 31 C.F.R., supra, which provides that the survivor in such a case is the *"sole and absolute* owner." [Emphasis supplied.] The Dietzen case was later criticized in the Case of Fidelity Union Trust Co. v. Tezyk, 140 N.J.Eq. 474, 55 A.2d 26, 173 A.L.R. 546. In the Tezyk case it was expressly held that Series E Bonds cannot be the subject of a gift causa mortis. In Davies v. Beach, supra, it was held that such bonds cannot be transferred by will, it being there stated [74 Cal.App.2d 304, 168 P.2d 456]:

"The statutory right, afforded by the State, to dipose of property by will is not paramount to the power of the federal government to borrow money. If such a statutory power can render nugatory the provisions of the bonds and the rules and regulations of the Treasury Department, upon which purchasers of the bonds rely, the power of the federal government to raise money will be impaired. The capacity of the federal government to borrow money depends on the inviolability of its obligation, and on its ability to carry it out strictly in accordance with its terms. If the State may treat the bonds as the property of some person other than the one whom the contract has designated the federal government will be prevented from carrying out its agreement."

It is also held in Mitchell v. Edds, Tex. Civ.App., 181 S.W.2d 323, that a will cannot divest a surviving co-owner of savings bonds of sole and absolute ownership of such bonds.

We have been cited to no case, nor have we found any, holding that the right of a surviving co-owner to complete ownership of such bonds can be defeated by will of the deceased co-owner.

Petitioner takes the position, also, that she has the equitable title to the bonds by virtue of a valid contract. She bases

this claim on the following facts: That Forney L. Little, prior to their marriage, and "as a condition to his marriage proposal, agreed that he would give these bonds to petitioner if she would marry him;" that "she accepted the proposition" and "did marry him on August 17, 1948, and that said Forney L. Little thereupon made actual delivery of these bonds to her." However, even if it should be assumed that there was a valid contract between petitioner and her husband, the bonds were not transferred according to the regulations prescribed by the Treasury Department which are paramount to any state laws. The petitioner, therefore, acquired no title to the bonds. In this connection, we quote the following from In re Hager's Estate, 181 Misc. 431, 45 N.Y.S.2d 468 ·

> "The bonds were issued in the name of the decedent, payable on death to Nathan Hager, the petitioner. As I pointed out in Matter of Deyo, under the form in which the bonds were issued, the beneficiary acquired a present interest at the time the bonds were purchased by the decedent, though such interest could not take effect in enjoyment until after the death of the decedent. Under the Treasury Regulations they are not transferable and are payable only to the persons therein named. Mere delivery of the bonds to the respondent, *even though for valuable consideration* as claimed by her, could not confer title in her. The decedent could have surrendered the bonds for redemption in his lifetime, but he was without power to eliminate the name of the petitioner as beneficiary during the latter's lifetime." [Emphasis supplied.]

Counsel for petitioner, in brief, calls attention to Section 315.13 of Tit. 31, C.F.R., supra, presumably to support his proposition that one can acquire equitable title to savings bonds by giving a valuable consideration therefor. But this section is concerned with judgment creditors, trustees in bankruptcy and receivers of insolvents' estates. It is true that a creditor who has reduced his claim to judgment may, during the lifetime of the purchaser of savings bonds, subject the purchaser's interest in such bonds to the payment of the purchaser's debts, Iowa Methodist Hospital v. Long, 234 Iowa 843, 12 N.W.2d 171, 150 A.L.R. 440; that the owner of a bond in beneficiary form can be compelled to surrender it to his trustee in bankruptcy, In re Bartlett, D.C., 71 F.Supp. 514; and that when the purchaser of a beneficiary form bond dies insolvent, the beneficiary of the bond can be required to surrender the bond for payment and remit the proceeds to the administrator of the estate, In re Laundree's Estate, 195 Misc. 754, 91 N.Y.S.2d 482. But such is not the case here.

It results, from what we have said, that the petition is due to be, and is, denied.

Petition denied.

LIVINGSTON, C. J., and SIMPSON and CLAYTON, JJ., concur.