# Park, et al. v. Powledge, et al.

### Bill to Enforce Resulting Trust.

(Decided December 21, 1916.    73 South. 483.)

Wills; Limitation Over; Executory Devise; Absolute Power of Disposition.—Where the will gave the entire estate to the widow "absolutely and in fee simple" and a codicil was appended merely cutting down her estate in the land to a life estate, and providing at her death "all the money on hand" shall be divided between others, the limitation over is void, as an executory devise, for repugnancy, because of the absolute power of disposition, of the first taker; the words "all the money on hand" meaning the money which she might leave or be possessed of, or which she had not disposed of, and not having the effect of cutting down her fee simple title to the money or personal property to merely a life estate.

APPEAL from Lee Law and Equity Court.

Heard before Hon. W. W. WHITESIDE, Special Judge.

Bill by G. F. Park and others against Wm. R. Powledge and others. From an adverse judgment, complainants appeal. Affirmed.

Bill by complainants G. F., J. T., and R. O. Park (appellants here) against W. R. Powledge and others for the enforcement of a resulting trust in and to certain real estate situated in the city of Opelika. The bill shows that these complainants are nephews of one David J. Taylor, who died in 1912, leaving a will bearing date August 3, 1872, to which was attached a codicil executed October 28, 1910, both instruments having been duly probated in Lee county probate court. It is further shown that at the time of his death Taylor was the owner of large and valuable farm lands, much personal property, and live stock worth about $5,000; that there was on hand 100 bales of cotton and a considerable amount of money in bank, and that the rents and income from his farms amounted annually to $5,000 or more.

Items 3 and 7 of the will read in part as follows:

"(3)   *  *  *   I do hereby devise and bequeath unto my well beloved wife, Mary Louisa Taylor, all my real, personal and mixed estate that I may have at the time of my death, and all moneys, choses in action, rights, credits, and all other interests whatsoever I may then possess or may be entitled to in any way or manner, absolutely and in fee simple."

[Park, et al. v. Powledge, et al.]

"(7) It is further my will and desire that after this my last will and testament shall have been fully probated and recorded, that my said executrix, Mary Louisa Taylor, may sell, transfer, convey and dispose of in any way or manner she may wish, any part or all of my said estate without any order or intervention in any manner of any court, or without application therefor, for any purpose that she may wish. All of which I do ordain and publish as my last will and testament for the disposition of any property which I may have at my death or be entitled to at that time in any way or manner."

And so much of the codicil as is here pertinent reads as follows:

"Comes the undersigned, D. J. Taylor, and adds to the foregoing will * * * a codicil not revoking said will but confirming the same except as changed by said codicil to be as follows:

"Item 1. The farm lands * * * bequeathed to my wife in fee simple, I now will and desire shall be hers only during her natural life, and at her death it is my will that the 320 acres known as the home place and the 285 acres known as the Jesse Taylar place, and 160 acres known as Moore place but formerly known as the John Mitchell place, and the 160 acres known as the Payne place, and 40 acres being a part of the John Mitchell place and known as the widow's dower, and 55 1/3 acres known as part of the West place—all in Lee county, Alabama, descend to my nephew, I. B. Mitchell.

"Item 2. At the death of my said wife it is my will that the 170 acres known as the old John Skinner place, the 240 acres known as the Walter Collins place, the 236½ acres known as the old John Hanson place, the 80 acres known as the Critty Cherry place and the 160 acres known as the Henderson place and 96 acres known as the Gillispie place, purchased of Hugh Gillispie —all in Lee county, Ala., descend to my nephew V. D. Mitchell.

"Item 3. It is my will and desire that at my death my niece, Mrs. Ophelia Fincher, have in fee simple that 120 acres of land in Lee county, Ala., known as the L. A. Wright place.

"Item 4. It is my will and desire that at the death of my said wife, all the money on hand shall be equally divided between G. F. Park, J. T. Park and R. O. Park, my nephews, and W. R. Powledge, her nephew, share and share alike."

The bill avers that it was the intention of said Taylor to make ample provision for the support and comfort of his wife, Mary

L. Taylor, during her lifetime; that after his death his widow took possession of all the lands and personal property of the estate, converting the latter into money amounting to the sum of about $15,000; and that the life of the testator was insured in the sum of $10,000, payable to his widow. It is further averred that by the codicil the testator willed only a life estate to the widow in the lands, and that it appears from item 4 of the codicil that it was intended that she should have a life interest, only, in the money belonging to the estate, and that at her death it should become the property of complainants—nephews of the testator—and of respondent, a nephew of the widow.

The bill further averred that soon after the testator's death the said widow moved into the home of her nephew, said Powledge, she being then 70 years of age and unable to look after the business affairs of the estate; that Powledge undertook the management of the estate for her and, being informed of the contents of the will and knowing there would be a large sum of money on hand at her death for division between complainants and himself, he influenced the said widow to invest the money realized from the sale of the personal property and otherwise raised on the estate in the purchase of other real estate, for the fraudulent purpose of defeating complainants' rights and the intention of the testator as expressed in item 4 of the codicil; that Mary L. Taylor for a like purpose did invest the money in real estate in the city of Opelika, which property is described in Exhibit B to the bill; and that a short time before her death she withdrew from the bank the sum of $7,000 and invested it in real estate, the description of which is unknown to complainants.

The bill then showed that Mary L. Taylor died in 1914, and her property was disposed of under a will of date August 12, 1914—which is made Exhibit C—under the terms of which the property described in Exhibit B was devised to W. R. Powledge or his children. The bill charged that under the provisions of the codicil the said Mary L. Taylor had a life estate only in said money, and had no right to invest it in the real estate described, and thereby destroying the rights of complainants, and that in equity and good conscience the said property should be held subject to the trust and to the equitable title as alleged to be owned by complainants.

An amendment to the bill merely made more specific the averments as to fraud on the part of Powledge, and demurrer to the

bill as amended was sustained by the court below. From this judgment the appeal is prosecuted.

GEORGE A. SORRELL, for appellants. N. D. DENSON & SONS, for appellees.

GARDNER, J.—The result of this appeal turns upon the construction of the will of D. J. Taylor, the important provisions of which are set out in the above statement of the case. In the will as originally executed the testator devised and bequeathed to his wife, Mary L. Taylor, his entire estate, "real, personal and mixed, * * * and all monies, choses in action, rights, credits and all other interests whatsoever, * * * absolutely and in fee simple."

Mary L. Taylor was appointed executrix without bond and exempted from making inventories of the property, and under the provisions of item 7 she was given full power of disposition of the property..

By a codicil executed in 1910 the gift to the wife of the fee-simple title to the real estate was expressly cut down to a life estate, and the testator there disposed of several parcels of said real estate to his nephews and niece, effective upon the death of his widow. No reference was made in the codicil to the personal property nor as to the widow's fee-simple title thereto; but by the fourth item of the codicil it is provided that at the death of the widow "all money on hand shall be equally divided" between complainants and respondent, and it is upon the language of this item that complainants must rest their case. They insist that in it the testator cut down the widow's interest in the personal property, or at least in the money, from a fee-simple title to that for life only, or in trust for complainants.

It is a well-settled rule that: "A clear gift is not to be cut down by anything which does not, with reasonable certainty, indicate an intention to cut it down.—*O'Connell v. O'Connell,* 196 Ala. 224, 72 South. 81.

The cardinal rule of construction of course is that the intention of the testator, as gathered from the language used in the will and from the four corners of the instrument, is to be given effect if not inconsistent with the law.—*Myrick v. Williamson,* 190 Ala. 485, 67 South. 273. If valid, the limitation over to these complainants of all money on hand at the death of the widow is an

executory devise. The principle applicable to cases of this character is treated in the case of *McRee v. Means,* 34 Ala. 349, from which we take the following quotation:

"It is a principle of law, too well settled to be controverted, that an absolute power of disposition or alienation in the first taker defeats a limitation over by way of executory devise. * * * What is meant by the absolute power of disposition which defeats an executory devise can best be ascertained by referring to the reason upon which the principle is founded. One of the distinguishing properties of an executory devise is its indestructibility and its total exemption from the power and control of the first taker. * * * As a consequence of this characteristic of executory devises, when the testator's intention to place the limitation over under the power of disposition of the first taker appears, the executory devise is void. The absolute power of disposition, which defeats the limitation over, is, therefore a power to destroy it by alienation, and not merely a power to alien the estate vested in the first taker. This will be apparent by a recurrence to the authorities, which show that an absolute power of disposition makes the limitation over repugnant, only because an executory devise is indestructible; and that the doctrine of repugnancy never has been applied, except in cases where the power of disposition infringed the limitation over. Kent's statement of the doctrine is as follows: 'The executory interest is wholly exempted from the power of the first devisee or taker. If, therefore, there be an absolute power of disposition given by the will to the first taker, as if an estate be devised to A. in fee, and if he dies possessed of the property without lawful issue, the remainder over, or remainder over of the property which he, dying without heirs, should leave, or without selling or devising the same; in all such cases, the remainder over is void as a remainder, because of the preceding fee; and it is void by way of executory devise, because the limitation is inconsistent with the absolute estate or power of disposition expressly given, or necessarily implied by the will. A valid executory devise cannot exist under an absolute power of disposition in the first taker.' "

The opinion in the *McRee-Means Case* cites by way of illustration many English and American cases where the limitation over has been held void for repugnancy, among them being *Jackson v. Bull,* 10 Johns (N. Y.) 19, where the limitation of such estate as the first taker might leave, and *Melson v. Doe,* 4 Leigh

(Va.) 408, where the limitation was of so much of the estate as might remain undisposed of by the first taker.

The case of *Howard v. Carusi*, 109 U. S. 725, at 730, 3 Sup. Ct. 575, at 578 [27 L. Ed. 1089], is of interest in this connection and recognized the general rule above stated, as is shown by the following paragraph: "The rule is well established that, although generally an estate may be devised to one in fee simple or fee tail, with a limitation over by way of executory devise, yet when the will shows a clear purpose of the testator to give an absolute power of disposition to the first taker, the limitation over is void."

Many other authorities are reviewed in that case.

Another case of interest is that of *Bernstein v. Bramble*, 81 Ark. 480, 99 S. W. 682, 8 L. R. A. (N. S.) 1028, 11 Ann. Cas. 343, which contains many quotations from other jurisdictions and from text-books on the subject, from which we take the following excerpts: "A testator by the second paragraph of his will gave his whole estate to his wife 'absolutely and forever.' In the following paragraph he provided that it was his will that if any of the property remained undisposed of after her death, it should go to his blood relations. Held, that the wife took a fee simple, and that hence the attempted disposition over was void, and the blood relations took nothing thereby. * * * 'It is the rule that where property is given in clear language sufficient to convey an absolute fee, the interest thus given shall not be taken away, cut down, or diminished by any subsequent vague and general expressions. This rule is applied where a fee is given either expressly by words of limitation, as to a person and his heirs, or by implication by a devise in general language through the operation of the modern statutes. If it is clearly the intention of the testator that the devisee shall own the fee simple, his subsequent language, directing that what remains of the property at the death of that devisee shall devolve upon a particular person or class of persons, will not cut down the fee to a life estate. The fee, being vested by express and appropriate words, will not be diminished by subsequent words of a vague and general character which are absolutely repugnant to the estate granted.' [2 Underhill, Law of Wills, § 689.] * * * It not infrequently happens that a testator disposes of property in fee, and then attempts to provide for the disposition of the property after the death of the devisee in fee simple.

A provision of this sort is to be carefully distinguished from the cases where a fee simple is cut down to a life estate by a devisee over after the death of the first taker. The distinction between the two classes of cases, though not strongly marked, is well recognized by the courts. If the devise over upon the death of · A. is intended to pass the entire property, it is evident that the testator contemplated that A. should take only a life estate, without any power of disposing of his property for a longer term than his own life. But where the devise over upon the death of A. shows that A. was vested with a fee simple estate, and that testator wishes him to have such an estate, but to direct the course of its descent upon his death, the limitation over after the fee is repugnant to the nature of the estate and void."

The cases of *Bradley v. Carnes,* 94 Tenn. 27, 27 S. W. 1007, 45 Am. St. Rep. 696; *Stowell v. Hastings,* 59 Vt. 494, 8 Atl. 738, 59 Am. Rep. 748, and *McKenzie's Appeal,* 41 Conn. 607, 19 Am. Rep. 525, are very much in point. In the latter is cited *Ramsdell v. Ramsdell,* 21 Me. 288, where it was held that the intention to authorize a legatee to dispose of property absolutely and without limitation was clearly implied by the words, "if any remains," in the devise over. Also *Harris v. Knapp,* 21 Pick. (Mass.) 416, where it was said that by the words, "whatever shall remain," the implication is inevitable that the legatee had power to make such disposition, and that this was inconsistent with the supposition that the whole was to remain undiminished in the hands of the executor or other trustee for the purpose of satisfying the gift over. In the *Stowell-Hastings Case* the court said: "Where the jus disponendi is conditional, as in those cases where the property is given for support only, with power over the principal for that purpose, or the estate given the first taker is one for life only, a different rule may prevail and the gift in remainder be valid. * * * In such cases, no absolute estate is given the first · taker."

Our own case of *Smith v. Cain,* 187 Ala. 174, 65 South. 367, seems to belong to this class, as the will there construed was held to indicate that the property was given to the widow "for her support and comfort * * * during her natural life."

The rule is therefore well established that a valid executory devise cannot exist under an absolute power of disposition in the first taker, as a limitation over would be void for repugnancy. The rule above quoted from Underhill on the Law of Wills, that

where the property is given in clear language, so as to convey a fee-simple title, the interest thus given shall not be taken away or cut down or diminished by any subsequent vague and general expression—which rule was given application in our recent case of *O'Connell v. O'Connell, supra*—should be kept in view in the construction of wills of this character. It but remains to apply these rules to the will here under consideration.

The Taylor will as originally drawn gave the entire estate to the widow "absolutely and in fee simple." She therefore had the absolute power of disposition over the personal property and the real estate. In the codicil to the will the original devise was not revoked, but expressly confirmed except as changed therein. So far as the title vested in the widow is concerned, the only change made was the cutting down of her fee-simple estate in the land to a life estate. Her absolute ownership and full control over the personal property was unchanged. The testator anticipating that at the death of the widow there would remain money on hand, attempted to make disposition thereof. The expression "money on hand" could certainly be held to have no stranger meaning than the phrase, "possessed of the property," found in the above quotation from Mr. Kent, or "such estate as the first taker might leave," quoted in the *McRee-Means Case, supra.*

To hold to the view insisted on by complainants it must be affirmed by this court that the testator meant by the codicil to revoke so much of the will as gave to the widow the absolute fee-simple title to the money and other personal property, and intended to substitute therefor that she could use it only for her life—for her support and comfort—and yet there is no language indicating such intention, although he expressly cuts down her fee-simple title in the real estate to that of life interest only. The expression, "all the money on hand," must be held to mean the money which she "might leave" or "be possessed of," or which she had not disposed of, but it cannot in our opinion be construed so as to cut down her fee-simple title to merely a life estate. Had the testator foreseen such a situation as presented here he might have guarded against it and limited the widow's power of disposition over the estate; but to thus enter into the field of conjecture is not permissible where the language of the will is clear and intelligible. This is rather forcibly illustrated in the following quotation from *Sherrod v. Sherrod*, 38 Ala. 537,

found in *Hollingsworth v. Hollingsworth,* 65 Ala. 321: "The court cannot resort to conjecture, when the terms of the will are of intelligible import. To do so, would be to make a will, conforming to what is supposed the testator intended—not to search for the intention in the construction of what is said. It is not the province of a court to incorporate into a will provisions which it may be supposed the testator would have adopted, if they had occurred to him. Nor is it the province of the court to provide for a contingency, neglected in the will, because there is room for conjecture that the testator would have done so, had he anticipated it."

Courts are not permitted, under a pretense of interpretation, to incorporate provisions in the will unless the will itself clearly shows such intention on the part of the testator. While we recognize the force of appellants' argument from a moral standpoint, we cannot give the force and effect to item 4 of the codicil contended for without entering the field of conjecture and inserting in the will provisions not expressed therein and not shown by clear and necessary implication to have been the intention of the testator. We therefore conclude that item 4 of the codicil is void for repugnancy.

It results that the decree sustaining the demurrer will be here affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.