93 So.2d 769

**A. L. BELL, as Adm'r, etc., et al.**

**v.**

**G. W. KILLIAN, as Adm'r, etc., et al.**

**7 Div. 223.**

Supreme Court of Alabama.

March 21, 1957.

Scott, Dawson & Scott, Fort Payne, for appellants.

John B. Isbell, L. L. Crawford, W. M. Beck and W. W. Watson, Fort Payne, for appellees.

GOODWYN, Justice.

This is an appeal by respondents below from a final decree of the circuit court of DeKalb County, in equity, rendered in a suit brought by appellees, residuary legatees under the will of H. H. Killian, deceased, for a construction of said will and incidental relief. In the first appeal of this case, the decree of the trial court overruling demurrer to the bill was sustained. Bell v. Killian, 256 Ala. 24, 53 So.2d 604.

The provisions of the will, executed in 1909, which are pertinent to a decision of the case are as follows:

"3. I give and bequeath unto my beloved wife Roxiene Killian all the property, real, personal and mixed, of every description or kind whatever, that I may own or be possessed of in this State or any other State in the United States, at the time of my death.

"4. I nominate and appoint my said Roxiene Killian as the executrix of this my last will and testament: And I hereby expressly relieve and exempt her from executing any bond for the performance of her duties as said executrix. And I also expressly relieve and exempt her from reporting or accounting to any Probate Court or other Courts having jurisdiction of estates and wills for her acts of administration under this will, or her transactions thereunder.

"5. I will and direct that my said wife as said executrix shall hold, manage and control all the assets of my estate, real and personal. My said executrix is hereby authorized and empowered to use said estate both real

and personal in such manner as she may deem fit and proper for her maintenance, well being, comfort and support.

"6. I authorize and empower the executrix of my said estate, to loan the assets of my estate, or to invest them either in real estate, or in bonds, or in other property as she, in her judgment may deem right and proper. I give her power and authority to collect the same, and all other matters due my estate, and receipt for the same, and make all contracts relative to my estate necessary to carry out this will.

"7. I hereby authorize and empower my said executrix to sell all real estate and personal property I may own at the time of my death on such terms as she may deem best, and to make proper deeds of conveyance thereto as said executrix and to collect for same by suit or otherwise and all mentioned in this item she may do without any order of any court and without further authority and power than is given hereby.

"8. I will that in the event there remains any of my said estate at the death of my beloved wife Roxiene Killian after paying funeral expenses as provided for myself—for her—, then in that event I will that whatever property of my said estate remaining on hand at her death, shall go to my brothers Bailey Killian and Demoville S. Killian and their heirs at law."

On the death of H. H. Killian in 1945 his wife Roxiene Killian was duly appointed as executrix. At that time the estate consisted of several tracts of land valued in excess of $50,000 and about $9,000 in bank deposits.

About two years after Mr. Killian's death, Mrs. Killian married A. L. Bell, one of the respondents below and an appellant here. In January, 1950, she died intestate.

Her husband was appointed administrator of her estate.

The ultimate effect of the evidence in the case at bar was to show that at the time of Mrs. Bell's death none of the assets of the Killian estate remained in their original form. The uncontroverted evidence showed that while serving as executrix she sold all of the estate's land and transferred the bank deposits of the estate into her personal account. As concluded by the trial court, there was a general commingling of the funds of the estate with Mrs. Bell's personal funds. The evidence further showed that Mrs. Bell purchased a farm with a part of the proceeds of the Killian estate, with herself and A. L. Bell as joint grantees, that another portion of the funds of the estate was used to purchase government bonds in which Mrs. Bell and other parties were designated as co-owners; and that the remainder of the funds of the Killian estate was placed in a joint bank account with Mrs. Bell and A. L. Bell as joint depositors. As a result of Mrs. Bell's actions there were no funds or property left in the Killian estate at the time of her death.

The complainants are Bailey Killian and the heirs of Demoville S. Killian. Their bill alleges that under the will of H. H. Killian the widow's right was limited to the use of so much of the property of the estate as was reasonably necessary for her maintenance, well-being, comfort and support, with a remainder over to the two named residuary legatees or their heirs; that the property of the testator's estate not so used, but fraudulently or improperly converted to the use of the widow and her second husband, Bell, was rightfully owned by the residuary legatees, subject to the continued administration of testator's estate until all matters pertaining thereto had been finally and properly concluded.

The first problem to be resolved is the proper construction of the Killian will. It is apparent that it is ambiguous in its provisions, and that judicial construction is necessary.

At the outset, it should be fixed firmly in mind that the ultimate purpose and duty of the courts in construing any will is to ascertain the intention of the testator and give it effect to the extent which the law will permit. Patterson v. First National Bank of Mobile, 261 Ala. 601, 603, 75 So. 2d 471; Watters v. First National Bank of Mobile, 233 Ala. 227, 234, 171 So. 280. To this end the court will put itself as far as possible in the testator's position by taking into consideration the circumstances surrounding him at the time of the execution of the will. Patterson v. First National Bank of Mobile, supra; Adams v. Jeffcoat, 252 Ala. 501, 503, 41 So.2d 183; Smith v. Nelson, 249 Ala. 51, 55, 29 So.2d 335; George v. Widemire, 242 Ala. 579, 7 So.2d 269. Further, the court will consider the will itself as a whole, giving effect to each of its provisions, if possible, so as to form one consistent scheme effectuating the intention of the testator. Watters v. First National Bank of Mobile, supra; Blackwell v. Burketts, 251 Ala. 233, 235, 36 So.2d 326.

The trial court construed the will as follows:

"The will in this case is ambiguous, but from the study of the records in this case, in light of the authorities as above cited, the court is clearly of the opinion that under this will Mrs. Killian, the widow, became a life tenant with power of disposition of so much of the property of the estate as was reasonably necessary for her maintenance, well-being, comfort, and support, with remainder over to the two named residuary legatees or their heirs. The court is convinced beyond any doubt that Mr. Killian did not convey and did not intend to convey to his wife a fee simple title to the property involved."

Appellants insist that the trial court erred in its construction of the will. Their theory of construction is as follows: Paragraph 3 of the will creates an absolute fee in the wife, and subsequent provisions giving the wife the power to control, manage, and sell the assets of the estate merely affirm the testator's intention to give her a clear title to all of his property. Appellants contend that the attempted residuary legacy in paragraph 8 is so vague and uncertain that it cannot cut down the clear gift of a fee to the wife contained in paragraph 3. It is insisted that the following canon must govern our construction of the will: "An absolute estate created in clear and decisive terms, cannot be taken away or cut down to a lesser estate or interest by subsequent words, which are not as clear and decisive." Schowalter v. Schowalter, 217 Ala. 418, 420, 116 So. 116; Hatcher v. Rice, 213 Ala. 676, 678, 105 So. 881; Ralls v. Johnson, 200 Ala. 178, 180, 75 So. 926; O'Connell v. O'Connell, 196 Ala. 224, 229, 72 So. 81.

While this is a recognized principle in the construction of wills, we do not think it is applicable in construing the will before us for the reason that paragraph 3, does not create an absolute fee in clear and decisive terms. The provision reads:

"3. I give and bequeath unto my beloved wife Roxiene Killian all the property, real, personal and mixed, of every description or kind whatever, that I may own or be possessed of in this State or any other State in the United States, at the time of my death."

Under our cases, a general devise of this nature which fails to specifically define the extent of the estate created, does not necessarily import an absolute fee if subsequent provisions of the will indicate that the testator intended a lesser estate. Patterson v. First National Bank of Mobile, supra; Higdon v. Higdon, 243 Ala. 571, 574, 11 So.2d 140; Schowalter v. Schowalter, supra; Hatcher v. Rice, supra.

The applicable rule is thus stated in Patterson v. First National Bank, supra, 261 Ala. page 607, 75 So.2d at page 475.

"It is well settled that where a will does not expressly define the estate of the first taker, a devise over after his death is definitive of his estate and will

be given effect in keeping with the intention of the testator, if not unlawful. Higdon v. Higdon, 243 Ala. 571(6), 11 So.2d 140."

■ The reasoning which supports this rule is sound. As with all canons of construction the purpose of the rule is merely to guide the courts in ascertaining the intention of the testator. In order to determine this intent it is obvious that the will must be considered as a whole. Therefore, when the testator makes a general devise without defining the extent of the estate which he wishes to create, and he subsequently provides for a remainder in the same property, it seems only logical to assume that he intended to qualify or limit the initial gift. There is no repugnancy between such provisions and none should be read into the will by the courts.

■ The rule which appellants rely on has application only when there is direct repugnancy between two provisions in a will. When there is an unqualified provision in a will creating "an absolute estate in clear and decisive terms" it is obvious that any subsequent clause which attempts to cut down or qualify this estate is repugnant to the first clause. Therefore, the courts have soundly reasoned that the intention of the testator to cut down an initial gift of an absolute estate must also be in clear and decisive terms in order to have effect.

The distinction between the fields of application of the two rules of construction set out above is clearly drawn in Schowalter v. Schowalter, supra [217 Ala. 418, 116 So. 118]:

"This court has in many cases considered the effect of provisions expressly or in legal effect devising an estate in fee, followed by others raising an inquiry as to whether from the will as a whole a less estate is intended. Each will presents its own inquiry. The mind of the testator is the law of the will, unless unlawful in purpose. Broadly speaking, a will which by ex-

press words declares the estate of the first taker to be in 'fee simple,' 'absolute and unconditional,' or words of like import, will be so construed unless subsequent provisions reducing such estate are so clear and unambiguous that from the whole will the intent to create a less estate 'clearly appears.' Ralls v. Johnson, 200 Ala. [178] 180, 75 So. 926; Pearce v. Pearce, 199 Ala. [491] 498, 74 So. 952; Park v. Powledge, 198 Ala. 172, 73 So. 483, L.R.A.1917C, 1001; Fowlkes v. Clay, 205 Ala. 523, 88 So. 651.

"Where the estate of the first taker is not expressly declared to be absolute or in fee, but such is the legal import of the terms used, the presumption that they are used in their technical and legal sense may be overcome by further provisions declaring an estate in remainder in the same property. Hatcher v. Rice, 213 Ala. 676, 105 So. 881. * * *"

■ It is our conclusion that the trial court correctly held that the Killian will did not convey a fee simple estate to the wife, and that her interest was qualified by the provision for a remainder to the testator's brothers or their heirs.

■■ However, it is evident that Mr. Killian intended his wife to have more than a bare life estate. Paragraph 5 of the will gives the wife a limited power of disposition:

"5. I will and direct that my said wife as said executrix shall hold, manage and control all the assets of my estate, real and personal. My said executrix is hereby authorized and empowered to use said estate both real and personal in such manner as she may deem fit and proper for her maintenance, well-being, comfort and support."

This provision should be construed in connection with paragraph 7 which gives the

wife an absolute power of sale over all of the testator's property:

"7. I hereby authorize and empower my said executrix to sell all real estate and personal property I may own at the time of my death on such terms as she may deem best, and to make proper deeds of conveyance thereto as said executrix and to collect for same by suit or otherwise and all mentioned in this item she may do without any order of any court and without further authority and power than is given hereby."

Here, a careful distinction should be drawn between the wife's "power of sale" and her "power of disposition." An absolute power of sale is given the wife in paragraph 7 of the will. A naked power of sale, even though absolute, is only the authority to pass a good title to property, and does not confer upon the person exercising the power the right to use the proceeds of the sale for his own benefit. In essence, the power of sale merely gives the wife the authority to change the nature of the corpus of the estate without the right to consume any of it. A limited power of disposition is given the wife in paragraph 5 of the will. A power of disposition confers the right to actually consume or use up the corpus. Here, the wife's power of disposition is limited to her reasonable necessities within her own sound discretion. Winn v. Winn, 242 Ala. 324, 328, 6 So.2d 401.

Construing these two provisions together it seems clear to us that the testator intended to clothe his wife with the absolute authority to sell any of his property, but to limit her consumption of the corpus of the estate to her reasonable necessities within her own sound discretion. Upon her death the unconsumed portion of the corpus passed to the testator's brothers or their heirs, under the express provisions of paragraph 8. It necessarily follows that if the wife exercises her power of sale during her lifetime and thus changes the nature of the corpus, that the remaindermen are entitled to the unconsumed portion of the corpus in whatever form it may be as long as it can be identified. To hold that the rights of the residuary legatees are extinguished merely by the exercise of the power of sale would defeat the clear design of the testator. Winn v. Winn, supra; Smith v. Cain, 187 Ala. 174, 177, 65 So. 367, 368.

In Smith v. Cain, supra, the language of the will under consideration was different from the Killian will, but the testator's overall scheme was essentially the same. The pertinent portion of the opinion in that case is as follows:

"In the case of Cain v. Cain, 127 Ala. 440, 29 So. 846, it was held that the provisions of the will of Thomas Y. Cain, here exhibited, gave to his widow, Nancy J. Cain, an absolute right to dispose of all of the testator's property, without restraint or control by the courts. Nevertheless, it is clear that under the terms of the will the heirs at law of the testator are entitled to all or any part of the estate remaining unconsumed and undisposed of at the death of Nancy J. Cain. Alford v. Alford, 56 Ala. 350; Rutledge v. Crampton, 150 Ala. 275, 43 So. 822. This proposition is not denied by appellants, but their insistence is that when Mrs. Cain exercised her power to sell any of the devised property, the proceeds at once became her absolute property, and, whether consumed by her or not, were absolved from any element of trust in favor of the remaindermen heirs at law. Appellants' theory is, in short, that the interests of the remaindermen can attach, under the terms of the will, only to such of the testator's property as remained in the hands of Mrs. Cain at her death unchanged in kind and in form. This theory is not without some degree of plausibility, but we think it is unwarranted and unsound. The intention of the testator is clear, and it is expressed in language that is simple and intelligible. He desired that his widow should have the unrestricted en-

joyment of his estate 'for her support and comfort,' and to that end she was authorized to sell and convey during her lifetime as much of it as she wished. It was equally his desire that whatever was left of the estate at her death should go to his heirs at law. To hold that this latter provision contemplated as the *residuum* of the estate only so much of it as remained unchanged in kind or form, would require a narrow and extremely technical construction of the will, and would unquestionably ignore and defeat the clear design of the testator."

Of similar import is Winn v. Winn, supra. The will under consideration in that case provided for a remainder after a life estate with a limited power of disposition for the purpose of support. There we held that upon the death of the life tenant the unconsumed portion of the proceeds from a sale of real estate under the power of disposition passed to the remaindermen.

Having concluded that a mere change in the nature of the corpus of the estate through an exercise of the wife's power of sale does not of itself extinguish the rights of the remaindermen, we are next faced with the question whether the wife could cut off the remaindermen by giving away the assets of the estate to third parties under her power of disposition.

The trial court found that Roxiene Killian Bell, the testator's wife, attempted to defeat the remainder to the testator's brothers by inter vivos gifts of all the assets of the Killian estate. This finding is sustained by the evidence. We are clear to the conclusion that the wife could not defeat the remaindermen in that manner. Such an exercise of the power would impinge on the rights of the remaindermen and defeat the clear intention of the testator. It is expressly stipulated in the will that the wife could consume the corpus only for the purpose of providing for her reasonable necessities. If the wife were allowed to give away the corpus under her power of disposition the intention of the testator would obviously be violated. Braley v. Spragins, 221 Ala. 150, 158, 128 So. 149; Yockers v. Hackmeyer, 203 Ala. 621, 622, 84 So. 709.

In Braley v. Spragins, supra, it is indicated that a life tenant, even though having an absolute power of disposition, could not defeat a stipulated remainder by giving away the assets of the estate. In that case we said [221 Ala. 150, 128 So. 156]:

"It may be observed of Mrs. Glant's [one of the life tenants] pleading as a complainant that it evidences no present intent to exercise the power. However, it may be said, in this connection, that such a life tenant with the power of disposition must act in good faith to the remainderman, and not give the property away to defeat or defraud the latter of his right or interest. That is to say, unless the power is ample, sufficiently specific and full, a life tenant may not give the property away by deed, merely to defeat a remainder interest limited on such life estate. It must be admitted that under the terms employed in the instant will there could be no *devise* of the interest or the power of appointment of those to enjoy what remained of the estate after death of the life tenant. Powell v. Pearson [220 Ala. 247] 125 So. 39. Such result could not be accomplished by way of a voluntary conveyance merely to destroy the corpus and prevent a remainder; or without a valuable consideration moving to and for the material benefit in good faith to such life tenancy.

"Any other rule would defeat the purposes of a testator (who stipulated for or contemplated a remainder or residue), and such action would be in the nature of a fraud upon her whom testator named to have and enjoy the residue of that estate. Yockers v. Hackmeyer, 203 Ala. 621, 84 So. 709.

"In 27 A.L.R. 1388, it is said:

"'A life tenant with power to dispose of the corpus of the estate, the un-

consumed remainder being cared for in the original gift cannot exercise his power of disposition by a gift of the property inter vivos. Yockers v. Hackmeyer (1919) 203 Ala. 621, 84 So. 709; Bishop v. Groton Sav. Bank (1921) 96 Conn. 325, 114 A. 88; Pearson v. Orcutt (1920) 106 Kan. 610, 189 P. 160; Cook v. Higgins (1921) 290 Mo. 402, 235 S.W. 807. See also Clore v. Clore (1919) 184 Ky. 83, 211 S.W. 208. * * * ' " [This annotation supplemented by 69 A.L.R. 825 and 114 A.L. R. 946.]

In Yockers v. Hackmeyer, supra, the testator gave to his wife a life estate with a power of disposition limited to several specific purposes. Upon her death the unconsumed remainder of the corpus was to be divided equally among his children. During her lifetime the wife conveyed certain real property belonging to the estate to one of the children without consideration. There we held that the conveyance must be set aside, because the wife's exercise of the power was limited to the purposes set out in the will, and an inter vivos gift of the assets was a violation of her authority.

▉ In conclusion, we find no error in the trial court's construction of the will that under the will "Mrs. Killian, the widow, became a life tenant with power of disposition of so much of the property of the estate as was reasonably necessary for her maintenance, well-being, comfort and support, with remainder over to the two named residuary legatees or their heirs." Such a construction gives a field of operation to each of the provisions of the will in such a manner as to form a cohesive, consistent scheme which we have found to be in accord with the principles of law laid down in our cases, and which we believe to be in accord with the intention of the testator.

It is evident under this construction of the will that upon the death of the life tenant, Mrs. Bell, the unconsumed corpus of the Killian estate must be distributed among the complainants as the residuary legatees.

The problem now arises as to exactly what remained of the corpus at the time of her death.

▉ In its decree the trial court found, in effect, that the following property could be identified as the unconsumed corpus of the estate:

(1) A 20 acre tract known as Berry farm the record title to which is in Mrs. Bell and A. L. Bell as grantees, (2) three lots in Pinellas County, Florida, the record title to which is in A. L. Bell, (3) several U. S. Government bonds registered to Mrs. Bell and various third parties as joint owners, (4) $5,000 paid into court as part of the purchase money for the Killian homestead, (5) bank account in the name of Mrs. H. H. Killian in Chattanooga, (6) bank account in the name of A. L. Bell, as administrator, in the State National Bank of Fort Payne.

The trial court found that all of these properties and accounts were actually portions of the corpus of the Killian estate or had been purchased with funds of the estate. The court also concluded from the evidence that Mrs. Bell had attempted to alienate all of this property from the estate by giving it away or by improperly placing it in her own name. Applying the law to these conclusions of fact the trial court held that the residuary legatees were entitled to this property as the unconsumed corpus of the Killian estate. The decree effectuated this holding by imposing a trust upon the property in favor of the complainants as remaindermen.

▉ It seems clear to us that the trial court's application of the law to its conclusions of fact was correct. As we have said earlier, Mrs. Bell could not dispose of the assets of the Killian estate by inter vivos gift. Braley v. Spragins, supra; Yockers v. Hackmeyer, supra. Nor could she withdraw from the Killian estate any of the corpus thereof by placing it in her own name. Bynum v. Swoope, 201 Ala. 19, 75 So. 170; Smith v. Cain, supra. Therefore, any gifts of the estate property by Mrs. Bell, or attempted conversions to her own

individual estate, were properly set aside by the court. Further, it is clear that the trial court could impress the trust upon any property which could be actually identified as a part of the corpus of the Killian estate even though it had been changed in form by investment of the estate funds in other types of property. "[For] so long as trust property can be followed, the property into which it has been converted remains subject to the trust." Evans v. Evans, 200 Ala. 329, 330, 76 So. 95, 96; Kennedy v. Carter, 217 Ala. 573, 574, 117 So. 182; Hanover National Bank of New York v. Thomas, 217 Ala. 494, 496, 117 So. 42; Hutchinson v. National Bank of Commerce, 145 Ala. 196, 201, 41 So. 143, 144.

The appellants do not question the general authority of the court to follow the trust property, but they insist that the court erred in impressing the trust upon the Berry farm and the Government bonds.

First we review the correctness of the decree with respect to the Berry farm. The real problem in this phase of the case lies in actually tracing the estate funds to this property.

The difficulty in following the trust funds arises from the fact that the fiduciary, Mrs. Bell, generally and continually commingled her personal funds with the funds of the estate in a single bank account. The evidence shows that during Mrs. Bell's administration of the estate, funds of the estate in excess of $50,000 came into her hands as executrix. A large part of these funds was placed in her personal account at the State National Bank of Ft. Payne, and comprised the great bulk of the deposits made in the account. The evidence is convincing that the entire purchase price of Berry farm was paid by a check drawn on this commingled account. An examination of the bank account indicates that at the time this check was drawn Mrs. Bell's withdrawals had already exceeded her deposits of individual funds. Upon this evidence the trial court concluded that Berry farm had been purchased entirely with funds of the estate and thus impressed the trust thereon.

We think the trial court's decree was clearly correct in this respect. The guiding rule is stated in Hutchinson v. National Bank of Commerce, supra, as follows:

"The doctrine is well established that, so long as trust property can be traced and followed, the property into which it has been converted remains subject to the trust; and, if one mixes trust funds with his own, the whole will be treated as trust property, except so far as he may be able to distinguish what is his. This doctrine applies in every case of a trust relation, and as well to moneys deposited in a bank, and to the debt thereby created, as to every other description of property. * * *"

And thus (with closer applicability to this particular situation) in Bank of Florence v. United States Savings and Loan Company, 104 Ala. 297, 300–301, 16 So. 110, 111:

"It is true that a trustee or an agent or other person standing in a fiduciary relation can not derive benefit from commingling with his own the moneys of his *cestui que trust* or principal; and it is equally true that, if he makes an investment of such moneys, a court of equity, so long as the moneys may be distinctly traced, will follow them, and impress upon the investment the trust to which the moneys were subject. * * *"

See, also, Evans v. Evans, supra; and Kennedy v. Carter, supra.

Under the authority of these cases we think that the trial court was clearly justified in impressing the trust on this property.

The last question raised on this appeal concerns the correctness of the trial court's decree with respect to the U. S. Government bonds. The decree affects 21 bonds having a total face value of $18,150. Each of these bonds is registered in the names of Mrs. Bell and one of the respondents as co-owners. The trial court found that Mrs. Bell had purchased all of these bonds with funds of the Killian estate and impressed thereon

a constructive trust in favor of the complainants. The decree attempts to divest all interest in the bonds out of the various surviving co-owners and to vest title thereto in the administrator cum testamento annexo of the Killian estate. The applicable portion of the decree reads as follows:

"It is further ordered, adjudged, and decreed that all the right, title, and interest of the Respondents, Albert L. Bell, Grady Thompson, Mrs. Louise Traylor, Hugh C. Traylor, Donald Eugene Bledsoe, Mrs. Elizabeth Guest, Mahalah Ann Traylor, Mrs. Dona T. Tolbert, Sam Eugene Killian, Bailey B. Killian, and Miss Elizabeth Burt, in and to said United States Government Bonds, hereinabove referred to, be, and the same is hereby divested out of said parties, and each of them, and is hereby invested in G. W. Killian, as the Administrator with the will annexed of the estate of H. H. Killian, deceased."

Appellants do not appear to question the trial court's finding that all of the bonds were purchased with funds of the Killian estate, but insist that the sole ownership of the bonds is vested in the surviving co-owners by virtue of Treasury Regulations regardless of the equities involved. Their position is that on authority of Ex parte Little, 259 Ala. 532, 67 So.2d 818, we should hold that the surviving registered co-owners are the sole owners and entitled to possession regardless of the circumstances, legal or equitable.

The holding in Ex parte Little, supra, was as follows: That a U. S. savings bond is a contract between the Federal government and the purchasers, and the rights of the surviving co-owner of a bond arises solely from that contract; that the effect of the Treasury Regulations relating to savings bonds is that upon the death of one co-owner the survivor takes title thereto as sole owner; and that the Treasury Regulations are incorporated into the contract by reference and are beyond the reach of state law to modify or destroy.

That decision appears to be in accord with the view taken by the overwhelming majority of federal and state courts. Chambless v. Black, 250 Ala. 604, 607, 35 So.2d 348; 91 C.J.S., United States, § 126, p. 316; Annotation, 37 A.L.R.2d 1221.

It seems clear, therefore, that it was beyond the power of the trial court to divest the title out of the registered surviving co-owners by a direct decree. Hence, the decree must be modified so that it will not impair the contractual obligations between the Federal government and the purchasers of the bonds.

Although it is clear that the trial court could not divest title to the bonds out of the surviving co-owners by direct decree (Ex part Little and Chambless v. Black), there is nothing in the Treasury Regulations to prevent the court from imposing a trust on the proceeds of the bonds. In re Hendricksen's Estate, 156 Neb. 463, 56 N.W.2d 711, 719; District of Columbia v. Wilson, 94 U.S.App.D.C. 399, 216 F.2d 630, 633; Moore v. Brodrick, D.C., 123 F.Supp. 108, 109; Anderson v. Benson, D.C., 117 F.Supp. 765, 780; Katz v. Driscoll, 86 Cal.App.2d 313, 194 P.2d 822, 828; Union National Bank v. Jessell, 358 Mo. 467, 215 S.W.2d 474, 477; Ibey v. Ibey, 93 N.H. 434, 43 A.2d 157, 159.

As is said in District of Columbia v. Wilson, supra [94 U.S.App.D.C. 399, 216 F.2d 633]:

"The regulations appear primarily designed to protect the Treasury as against adverse claimants in paying interest and principal of the bonds to the registered owner. The Treasury commonly has no concern with the funds or their disposition once it has paid them to the registered owner. Its contract has then been fulfilled. * * * Indeed, where no purpose to defraud the Government has appeared, numerous courts have directed the registered owner to cash United States savings bonds and have ordered the proceeds paid to, and held in trust for, the true

owner, notwithstanding Treasury regulations. See Makinen v. George, 1943, 19 Wash.2d 340, 142 P.2d 910; Union Nat. Bank v. Jessell, 1948, 358 Mo. 467, 215 S.W.2d 474; Katz v. Driscoll, 1948, 86 Cal.App.2d 313, 194 P.2d 822; In re Hendricksen's Estate, 1953, 156 Neb. 463, 56 N.W.2d 711."

The possible results flowing from an unqualified adoption of appellant's theory is well stated in another Federal case, viz.:

"Counsel for the defendants contend under the Treasury Regulations the form of registration of these bonds is conclusive of ownership, 31 C.F.R. (1949 Ed.) 315.2 et seq., and that this court cannot enter an order affecting either the ownership of the bonds or the proceeds received therefrom. If counsel's construction of the regulations were accepted without qualification United States Savings Bonds would become the inpenetrable sanctuary of ill-gotten gains and an excellent instrumentality for the perpetration of deliberate fraud. That Congress did not intend, in exercising its constitutional power to borrow money, to effect such a result is too clear to require discussion." Anderson v. Benson, 117 F.Supp. 765, 780, supra.

In Katz v. Driscoll, 86 Cal.App.2d 313, 194 P.2d 822, 828, supra, it is said:

"These laws and regulations are not intended to confer on the beneficiary [or surviving co-owner] the right to retain permanently the proceeds from the bonds irrespective of fraud or any illegality in the manner in which the bonds were obtained. To hold otherwise would, in effect, say that the treasury regulations not only guarantee payment to the named beneficiary, but, thereafter, when he receives the proceeds, follow him around indefinitely, and like a protective halo, render him completely immune from any ordinarily legitimate claims thereto. For the purpose of payment and performance of the government's contract obligation, the beneficiary is recognized as the 'sole and absolute' owner. But 'the rights of survivorship conferred by these [treasury] regulations upon a surviving co-owner or beneficiary' (Sec. 315.13(1)) terminate there."

It is our conclusion that the trial court was correct in holding that the complainants were entitled to the beneficial interest in the bonds, but the decree should have impressed the trust upon the proceeds of the bonds and not upon the bonds themselves. The decree should be modified to require the surviving co-owners to cash the bonds and pay the proceeds into court for transfer to the administrator of the Killian estate.

Modified and affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.