97 So.2d 557

Fonvell Calvin HINSON et al.

v.

Richard Arthur HINSON et al.

3 Div. 776.

Supreme Court of Alabama.

Oct. 24, 1957.

Rogers, Rogers & Scott, Greenville, and Brooks & Garrett, Brewton, for appellants.

McQueen & McQueen and Jas. E. Morrisette, Tuscaloosa, and W. J. Williamson, Greenville, for appellees.

GOODWYN, Justice.

This is an appeal from a final decree of the circuit court of Butler County, in equity.

Appellees brought suit for sale for division of certain real property located in

Greenville, Alabama, alleging that they are tenants in common with appellants, and that each of them owns an undivided ⅐ interest in the property. Appellants' answer denies that appellees have any interest in the property and alleges that the property is owned solely by appellants, as the only heirs of their mother, Leila Camilla Hinson.

Briefly, the undisputed facts are as follows: A. T. Hinson, deceased, was the father of all the parties to the suit. On April 1, 1901, he executed his last will and testament. This was after the death (on September 3, 1893) of his first wife and his subsequent marriage (on January 2, 1898) to his second wife. He died on September 13, 1910, and his will was duly admitted to probate on September 29, 1910. The pertinent provisions of the will are as follows:

"Second.

"To my wife, Leila Camilla Hinson, I bequeath the house and lot where we now live together with its entire contents, except such articles as is contained therein, which was left to my children by my first wife, Fannie C. Hinson.

"Third.

"I now have certain policies of Life Insurance which are payable to my wife and children as stated therein. I do not wish any change made in the same, but I do hereby bequeath to my heirs that before any division is made of my estate, that there shall be taken from the proceeds of my said estate a sufficient sum of money, so that it, when added to the Life Insurance devised by me will then when divided between my heirs & wife give to them all an equal part, share and share alike; after this is done, I then desire and bequeath that the residue of my estate shall be divided equally between my wife, Leila Camilla Hinson; my sons Richard Arthur Hinson; Irby Brantly Hinson; Alexander Arnold Hinson and my daughter, Eddie Belle Hinson,

share and share alike. The bequest to my wife as stated in paragraph 2 is to be independent of this or any other bequest.

"Fourth.

"In case any of my heirs whether herein mentioned or not should die without marriage or issue before I do, then I devise and bequeath that such interest shall be equally divided between the balance of my legatees as herein stated, share and share alike.

"Fifth.

"In case there shall be born in the future an additional child or children by my present wife, then I desire and hereby bequeathe [sic] that such child or children shall have a full heirs part and in that event that my estate be divided accordingly.

"Sixth.

"In case my wife, Leila Camilla Hinson survives me without issue, then at her death it is my will & I do hereby bequeathe that all of the property left her by me as herein conveyed shall be equally divided between the surviving children by my first wife, Fannie C. Hinson, share & share alike, but in case she dies having child or children by me then I desire and bequeathe that all the property left her by me shall then revert to my estate and shall be divided equally, share and share alike between all of my heirs then living."

■■ Appellees are the children of his first marriage and appellants are his children by his second wife. Appellants claim full ownership of the property by virtue of a deed to them executed by their mother, Leila Camilla Hinson, on October 18, 1935, in which she retained a life estate. Their contention is that their father's will devised this particular property (the home place) to their mother in fee simple, to the exclusion of appellees. Appellees contend

that, under the will, she took only a life estate, the intention of the testator being that the remainder should go, on her death, to all of his children in equal parts. Leila Camilla Hinson died on December 18, 1954.

The trial court rendered a decree in favor of appellees and wrote an opinion giving the basis for its decision. It seems to us that that opinion adequately states the case and disposes of the arguments made on behalf of appellants, viz.:

"The cause was tried orally before the Court. The greater part of the evidence is made up of a written stipulation on file in the cause and the documentary exhibits. Solicitors for both sides furnished briefs that have been very helpful to the Court. The Court has carefully read and considered said briefs, and has also carefully read all of the cases cited, except some of the ones pertaining to the competency of the Testimony of R. A. Hinson. This Court's conclusion would have been the same if R. A. Hinson had not testified; hence no decision is made as to the admissibility of his testimony.

"There can be no doubt that said Will contains conflicting provisions making a judicial construction necessary. The conflicts are between provisions of the second, third and sixth paragraph of the Will. The other paragraphs are not important except that the fourth and fifth paragraphs do indicate that the testator tried to foresee and provide for every contingency.

"By the second paragraph the testator devised the homestead and contents to his widow, without express condition or limitation but also without words of inheritance. Standing alone the devise would have been in fee. But by the sixth paragraph of his Will the testator clearly imposed a lifetime limitation on '*all* of the property left her by me' (emphasis supplied), and disposed of the remainder or reversion by devising the same to his children

by his first wife and to any after-born children by his second wife. The second and sixth paragraphs do not of themselves create an ambiguity. The second paragraph creates an estate and the sixth paragraph defines or limits the estate created. The last sentence of the third paragraph creates the ambiguity that brought about controversy.

"Said last sentence reads 'The bequest to my wife as stated in Paragraph 2 is to be *independent* of this or *any other* bequest'. (Emphasis supplied.) It seems to us that the real conflict grows out of the use of the words 'Independent' and 'any other' in this clause and the word 'all' preceding the words 'of the property left her by me' in the sixth clause. As Respondents have pointed out it is our duty to reconcile these conflicting words and to give effect to all of them if possible. But can we do so? We think not. If we give effect to the words 'independent' and 'any other' in the third paragraph, the property devised in the second paragraph passed to the widow [without] limitation. But in that case what are we to do with the limitation imposed in the sixth paragraph on '*all* of the property left her by me'? (Emphasis supplied.) Obviously the conflict can not be reconciled so as to give effect to both provisions, and we must resort to the rules of construction in order to arrive at the testamentary intent.

"We will first consider briefly the rules discussed in Respondents' brief:

" '(a) The cardinal rule in the interpretation of wills, to which all others must bend, is that the intention of the testator shall prevail, providing it is consistent with the rules of Law'. Certainly, but the problem here is: What was the intention of the testator? That we have tried to discern by considering all of the facts and circumstances and by applying the one rule of

construction that seems most applicable to this case.

" '(b) A clear gift is not to be cut down by anything which does not with reasonable certainty indicate an intent to cut it down.' But the provisions of paragraph sixth cut something down with absolute certainty. The question is: Did it cut down only the proceeds of life insurance and other property given under the third paragraph; or did it cut down *all* of the property left her by him, which would include the homestead devised in the second paragraph?

" '(c) Each item of the Will must be given effect, if possible.' As we have undertaken to demonstrate, that is not possible in this case.

" '(e) The law favors construction of a Will which vests in devisee a fee simple title'—but not as against a clearly expressed contrary intention. In the case at bar there is a clearly expressed contrary intention as to certain property. The only riddle is as to *what* property, *All* or only part.

" '(f) A provision in the Will in favor of the wife should receive that construction most favorable to her.' But ours is not a question of construing a provision of doubtful meaning but of determining which of two perfectly clear but conflicting provisions shall prevail.

"It seems to us that the only rule of construction of any assistance here is the one enunciated by Complainants, viz.: 'Where there is an irreconcilable difference between two clauses or provisions of a Will, the last generally prevails as being the latest expression of testator's intention.' And the result of the application of this rule is not at odds with what seems to have been the over-all intention of the testator nor does it conflict with what one would expect any testator might do under the same circumstances.

"The testator was married twice. At the time of the execution of the Will he had four children by his first wife and no children by his second wife. He had had one child by his second wife, but the child had died; and it was approximately 17 months after the execution of the Will before the next child was born to the second wife. Therefore, at the time of the execution of the Will the testator had four children by his first wife and no children by his living wife. Under these circumstances it was natural for the testator to undertake to secure the sanctuary of the home to his second wife for her lifetime but to provide for its return on her death to his own children. Certainly, it is abundantly clear that it was the testator's intention that all of his property was to be divided among his wife and children. But, if we adopt the Respondents' construction of the Will, and if the testator had died before any children were born to his second wife, the home would have ultimately gone to some other than his children unless his second wife had conveyed it to them by deed or testamentary devise. This obviously was not the testator's intention.

"However, with commendable foresight he recognized the possibility of and made provision for after-born children; but in the two clauses of the Will in which he made such provision he made it abundantly clear that after-born children were to receive no more and no less than the children of his first marriage. This indicates an over-all testamentary plan that all of his children were to share and share alike.

"It can not be denied that by the sixth paragraph the testator expressed the intention that *some* or *all* of the property willed to his widow revert at her death to his estate to be equally divided among all his children. Which property? According to Respondents' construction the testator would have

imposed this limitation on the proceeds of the life insurance and other personal property and an undivided interest in farm lands—assets which the widow was most likely to consume—and would have failed to impose it upon the property that she was most likely to keep. It appears to the Court that it is a more reasonable construction in keeping with the over-all testamentary plan that the testator intended to impose this limitation on the homestead and all such other property as the widow might not consume in her lifetime.

"What then shall we do with the last sentence of the third paragraph? What place would it have in the testamentary scheme? Had this sentence appeared at the end of the sixth paragraph instead of the third the result would undoubtedly have been different. Had a similar clause appeared at the end of the second paragraph the result probably would have been different. Appearing where it does in the Will, we agree with the Complainants that its sole purpose and meaning was to make it clear that in the equalizing of the shares of the residue of the estate the widow was not to be charged with the value of the homestead. We confess that the last four words of the sentence ('or any other bequest') are puzzling; but to us they are no more expressive or emphatic than the word 'all' which twice appears in the sixth and later paragraph of the Will.

"We might say parenthetically that in dividing the life insurance and other residue the widow and heirs invoked the same rule that we have followed, i. e., they recognized that the provisions for the distribution of the residue as set out in the third paragraph were modified and limited by the provisions of the fifth paragraph providing for after-born children.

"Therefore, we conclude that the Complainants are tenants-in-common with the Respondents of the property described in the Bill of Complaint and are entitled to have the same sold for division. The decree will provide accordingly."

We find no error in the trial court's construction of the will. In this connection, see the recent case of Bell v. Killian, Ala., 93 So.2d 769, 774–775, which we think is also dispositive of this appeal.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.